SAMUEL, Judge.
Plaintiff filed this suit to cancel a contract of sublease. He alleges the defendant breached the agreement by: (1) altering the leased premises without permission of either the owner or the sublessor and using the premises for a purpose other than that specified in the lease; and (2) by using the property for an unlawful purpose, i.e., showing lewd movies. Defendant pleaded the doctrine of equitable estop-pel averring plaintiff had acquiesced in the renovation and use of the premises by failing to act for more than six months after the renovations had been completed.
Plaintiff has appealed from a judgment dismissing his suit. Originally the lessor, Leo Menendez, was a party plaintiff. Defendant pleaded an exception of no cause of action claiming lack of privity of contract between him and Menendez. The exception was maintained and that plaintiff has not appealed.
On August 6, 1970, in conjunction with a bulk sale whereby plaintiff sold his business to defendant for $30,000, plaintiff subleased to defendant “ . . . the premises described as 405 Bourbon Street, Ground Floor under the terms and conditions described in that certain Lease of Commercial Property dated October 31, 1968 ... , all conditions of which are made a part of this sublease.” The original lease between Leo Menendez as owner and plaintiff as lessee provided, inter alia:
“The premises herein leased are to be used only for the following purposes: Bar, Cocktail Lounge and Club to be known as ‘DESIREE CLUB’. Lessee is obligated not to use the premises for any purpose that is unlawful or that tends to injure or depreciate the property.”

and
“Lessee is obligated not to make any additions or alterations whatever to the premises without written permission.”
Defendant operated a nightclub at the location for several months. Then, without obtaining written permission from Men-endez or plaintiff, he converted the premises into an adult movie bar at a cost of *254 $13,000. The renovation included removal of two front showcase windows, a 40 foot section of the bar, and a concrete and terrazzo footrest; and theatre seats of a special type were installed. The work was undertaken and completed within three weeks during November, 1970. Upon completion the operation as a movie bar was begun.
Without rebutting or replying to the estoppel argument urged by defendant, plaintiff relies on two lines of decisions holding a lessor may cancel a lease if: (1) the lessee materially alters the leasehold without permission;[1] or (2) the lessee uses the property for purposes other than those recited in the lease.[2]
While the cited authorities support the foregoing propositions, neither legal point is determinative of the issues herein. Defendant concedes the alterations were made without consulting either plaintiff or the owner and that it operated an adult movie house rather than a bar and cocktail lounge. Its defense rests on plaintiffs acquiescence therein for a long period before filing this action.
In this connection, the record reflects Menendez signed a permit required by the City of New Orleans to effect the plumbing chánges necessitated by the renovation and that both the owner and the plaintiff were seen by the supervisor of construction while the work was underway. Men-endez lived at 405.V¿ Bourbon, upstairs from the leased premises, while plaintiff operated a nightclub across the street. Although the renovation was completed in November, 1970 and the operation as a movie bar immediately begun, no complaint was made to the defendant until May, 1971, more than six months later.
Under these circumstances plaintiff is estopped from bringing an action to cancel the lease on the ground of the lessee’s breach by making material alterations without permission and using the property for a purpose other than that recited in the lease. The doctrine of equitable estoppel was recently defined by the Supreme Court of Louisiana in American Bank & Trust Co. v. Trinity Universal Ins. Co., 251 La. 445, 459, 205 So.2d 35, 40, as follows:
“Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Founded upon good faith, the doctrine is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence.”
The court particularly noted that to invoke this defense successfully the pleader must establish he relied on the plaintiff’s conduct and was justified in so doing.
Here the record establishes both the owner and plaintiff were on the scene while the renovations were underway, the owner even signing one of the construction permits, and as we are satisfied both knew of the operation of the movie bar, we can only conclude defendant was justified in viewing these acts as a tacit approval of the renovations and operation by both owner and sublessor.
We agree with the trial judge’s finding that plaintiff failed to prove the second condition allegedly breached by the defendant, i.e., using the premises for an unlawful purpose. Plaintiff testified lewd movies were shown on the premises and, as a result, the vice squad of the New Orleans Police Department raided the operation and ultimately the alcoholic beverage permit issued to one of defendant’s officers *255 was revoked. To establish that an unlawful activity had been conducted, plaintiff’s attorney asked the lower court to take judicial cognizance of a proceeding in another division of the Civil District Court for the Parish of Orleans concerning revocation of an alcoholic beverage permit for the year 1971. Plaintiff’s attorney at no point attempted to offer the record in evidence. After a colloquy between counsel and the Court about judicial cognizance, plaintiff’s attorney stated:
We do ask you that you take cognizance of 521-978 of this Court. I’ll try to get this file but we were doing a lot of work up there and there must be a couple of hundred files up there I couldn’t locate this record but I will show it when it is replaced and then it can be found.”
The record contains nothing further concerning the revocation of alcoholic beverage permit proceeding. The last mention of that proceeding was made by plaintiff’s attorney when he promised to produce it. There is no explanation as to why the record was never introduced. The procedure for introducing in evidence another record of the same district court is outlined in LSA-R.S. 13:3723, which states in part:
“Whenever, during the trial of any suit, . . . before any of the district courts, either party may desire to offer in evidence any record . . . belonging to the files or records of the district court ... in which the trial is proceeding, the presiding judge at the request of such party shall direct the clerk of the district court to produce such record ... in order that it may be used in evidence. . . .” LSA-R.S. 13:3723.
Plaintiff failed to follow this procedure or to produce the record as he indicated he would. Since the record in the other proceeding was not before the trial court and is not before us, we cannot pass on whether it was admissible in whole or in part or, if admissible, whether it does establish defendant conducted unlawful acts on the premises in violation of the lease. It suffices to say plaintiff failed to adduce any evidence on this point other than his own unsupported opinion that lewd movies were shown on the premises. Accordingly, we find no merit in the second contention.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Citing Balser v. Shreveport Oil Co., 163 La. 1008, 113 So. 366, and Stumpf v. Snell, La.App., 34 So.2d 369.

. Citing Caffin v. Scott, 7 Rob. 206; Reilley v. Kroll, 197 La. 790, 2 So.2d 214.