269 So.2d 291 (1972)
Miss Margaret C. MOORE and Miss Elizabeth J. Moore, d/b/a Moore and Moore,
v.
Glynn L. BANNISTER.
No. 5198.
Court of Appeal of Louisiana, Fourth Circuit.
November 8, 1972.
Rehearing Denied December 5, 1972.
Roos & Roos, Leo Roos, New Orleans, for defendant-appellee.
George E. Konrad, New Orleans, and Lucas F. Bruno, New Orleans, for plaintiffs-appellants.
Before SAMUEL, CHASEZ and BOUTALL, JJ.
BOUTALL, Judge.
This is an appeal from a judgment dismissing plaintiffs' suit for possession of premises, arising out of a written lease between the parties.
Plaintiffs' petition alleges that the lessee is in violation of the terms of the lease in three particulars: (1) subleasing the premises without permission, (2) making alterations in the premises by placing an air-conditioning unit in the hallway of the premises and (3) causing a common hallway used by other tenants to become unbearably hot due to the discharge of the air-conditioner. The lease is a printed form, the *292 pertinent part of which contains the following special stipulations:
"Lessee is hereby granted permission to sublease the premises herein mentioned and to make any improvements, painting or maintenance on the said premises as long as it meets with the standards of the Vieux Carre Commission of New Orleans, providing that any sublease hereof or any improvements made therein shall be approved by the Lessor in writing, which approval shall not be unreasonably withheld."
The trial judge found the following facts:
"* * * That the permission for the sublessee to occupy the premises under the terms of a sublease was submitted to the plaintiff; that after much correspondence with plaintiff's attorney the sublessee was permitted to remain in the premises for a period in excess of six months; that the permission to remain in the premises in the Court's opinion acted as a tacit and actual approval of the sublessee by the plaintiff who did accept the rents from January of 1971 to September 20, 1971; * * *.
"In the Court's opinion the alteration and the placement of the air-conditioning unit was made with the tacit and complete approval of Miss Moore, the lessor of the premises."

* * * * * *
"Furthermore, in the Court's opinion the location for the selection of the air-conditioning unit was selected by the plaintiffs insofar as they had the wiring for the air-conditioning brought to the location in which the unit was later placed and that the plaintiff acquiesced in the placement thereof in excess of several months * * *."
There is ample support in the record for these findings of the trial judge. The evidence shows that the plaintiffs and defendant had originally had an oral rental agreement whereby the defendant took possession of the premises as tenant and began to make improvements therein. A written lease was then entered into between the parties. At this time the defendant spent in excess of $1200.00 in renovating and redecorating the premises, which is a first floor shop in a building containing living apartments on the other floors. Also at the inception of the lease it was discovered that the wiring in the building was substandard, and the plaintiffs entered into a contract with an electrical contractor to renovate the wiring at the cost of several thousand dollars. At this time Mr. Bannister requested, although it is denied by plaintiffs, that a 220-volt electrical circuit be installed in the premises for the purpose of utilizing air conditioning. This additional installation was made by the electrician, although apparently not originally contemplated by him. This circuit terminated at a location near the doorway above which the air conditioner was located. The lessors saw the place frequently and expressed no objection to location or the use of the air conditioner until such time as the tenants complained in August of 1971 about the heat in the hallway caused by the exhaust from the rear of the air conditioner into the hallway. A wiring deficiency for the installation was then corrected, and the unit itself later removed.
In connection with the subletting, the evidence shows that the lessee notified lessors in December of 1970 that he intended to sublet the premises on the same terms and conditions. Considerable correspondence took place between the parties in connection with this, the gist of which was a request by lessors that they be furnished additional information about the proposed sublessee, and this was furnished by lessee who insisted that he himself would continue to be responsible completely under the terms of the original lease. Correspondence ceased in the early part of February, 1971, without a determination one way or another as to the acceptability of Mr. Phillips, the proposed sublessee.
*293 In any event the sublessee entered into the premises sometime in the latter part of December, although it was not until January, 1971, that the lessors knew that Mr. Phillips was the new sublessee. Nevertheless, no objection was raised until August, 1971, at which time a letter was written to Mr. Bannister, the lessee, demanding possession of the premises, on the three grounds already mentioned.
It thus appears to the court that, in each of the instances complained of by the lessors, there is ample evidence to substantiate the findings of the trial judge that the lessors did grant permission by their actions. There is nothing to indicate any violations of the Vieux Carre Commission standards. The conclusions of the trial judge as to the sufficiency of the evidence and the credibility of the witnesses are given great consideration and should not be disturbed unless there is manifest error present.
We now pass to a consideration of the law involved. The basic issue between the parties is the lack of written permission from the plaintiff for the sublease and for the installation of the air conditioner. It is important to note that in this lease, the lessee was granted permission to sublease and make improvements provided that this be approved in writing, "which approval shall not be unreasonably withheld." Thus we are not presented with the situation where the lessee is forbidden to do these things completely, for the terms of the lease place a restriction upon the owner in withholding approval. The trial judge found that in both instances, there was "a tacit and actual approval of the sublessee by the plaintiff" and "the tacit and complete approval" of the placement of the air conditioning unit. We are led to conclude that the failure to furnish approval in writing was an unreasonable withholding of such approval.
We are aware of the jurisprudence holding that the right of a tenant to sublease under the provisions of LSA-C.C. art. 2725 must be construed strictly against the lessee. See Owens v. Oglesby, 123 So. 2d 521 (La.App.Orl.1960). Nevertheless, the tenant is entitled to those rights granted him by the contract of lease, and our examination of the evidence convinces us that withholding of written permission in this case is unreasonable. The record is barren of any reasonable circumstance which would cause the lessor to decline the sublessee as a tenant. In fact, the evidence shows that Mr. Phillips was a reputable, substantial business man who had engaged in business in the area for several years and who is actually paying more than double the rent as sublessee than lessee is paying, even though using the premises for the same business. As to the alterations for the air conditioner, the trial judge found that actual consent had been granted, although not in writing.
The requirement of approval by the lessor in writing contained in the lease is certainly a provision for the benefit of the lessor, and if he chooses to waive it by verbal consent or by his actions, we know of no reason why he could not do so. In previous similar cases we have held that a prohibition against the tenant subleasing unless the lessor yield his consent in writing, is clearly a stipulation in the interest of the lessor alone, and of course he may waive it whenever he pleases to do so; and since there is no law which requires such waiver to be in writing, it follows that the waiver may be oral and need not even be expressed. Moreira v. Heckman, 3 Peltier's Orleans Appeals # 7842 (La.App. Orls., 1920); Dominique v. Connell, 4 Peltier's Orleans Appeals # 8051 (La.App. Orls., 1920).
It appears to us, as it did to the trial judge, that the actions of the plaintiffs in this case were such as to lead us to conclude that the plaintiffs had waived the requirements of approval in writing.
Counsel has also presented to us for consideration the doctrine of equitable estoppel contending that the actions of the plaintiffs *294 in permitting the occupation and use of the premises by the tenant had gone unquestioned for so long, that the plaintiffs should now be estopped from filing suit for eviction. We prefer to base our opinion on the grounds discussed above, but we must take note of a recent decision of this court in the case of Faber v. Gay Times, Inc., La.App., 267 So.2d 252, handed down September 29, 1972. While we believe that the principles announced therein would be of great influence on a determination of the issue of equitable estoppel in this case, we prefer to base our opinion within the confines of this lease, that is, the unreasonable withholding of consent.
For the reasons above stated, we are of the opinion that the decision of the trial judge is correct. Accordingly, the judgment appealed from is affirmed; all costs to be paid by the appellant.
Affirmed.