CRAIN, Judge.
The matter before us involves a claim by First Louisiana Mortgage Co., Inc. for a brokerage fee against Nesser Gardens, Inc. and Seaborn R. Wicker, Jr. The trial court decided that the plaintiff was not entitled to relief and dismissed his suit. From this decision, the plaintiff has appealed.
The trial court made the following findings of fact:
“The president of the plaintiff mortgage company, Mr. Fred Frey, and Mr. Steve Wicker had enjoyed a rather informal and friendly business relationship during 1966 and 1967. Frey was and is a mortgage loan broker; Wicker was and is a real estate broker and promoter. In May, 1967, they discussed a proposed project calling for construction of one hundred one garden apartments on Jefferson Highway. In the past they had worked together and in each case where financing was obtained by Frey, he was paid a fee of one per cent of the loan commitment.
. In furtherance of the subject project Frey set about preparing projections of rent, pro forma statements, securing and assembling financial statements of the proposed principals (a group of Baton Rouge physicians, some of whom had participated in prior projects with Frey as a mortgage broker and Wicker, the promoter), working with the architect whom Wicker had employed for a set free to prepare preliminary drawings, and generally assembling the ‘package’ for presentation to various mortgage lendors.”
The trial court further found that Frey presented his package to several different companies but was unable to interest the doctors in any of the arrangements he had tentatively worked out.
In August of 1967 the last proposition of Frey was presented and rejected, and the project was considered to be over or dormant. In October of 1967, A. J. Abat, an insurance agent for New York Life Insurance Company, approached Wicker and indicated that he could arrange the financing with New York Life if Wicker purchased a $1,000,000.00 life insurance contract from him. After getting Wicker’s go ahead, Abat immediately contacted Mr. Russ Foti of First National Mortgage Corporation who regularly acts as broker for loans made in the Baton Rouge area for New York Life. Abat obtained the pro forma statement prepared by Mr. Frey and the working drawings prepared by Faxon, the architect, and Mr. Foti, after receiving these documents, began to assemble his own package for submission to New York Life. Subsequently a commitment was issued through the efforts of Mr. Foti on January 8, 1968, to the proposed Nesser Gardens, Inc. The corporation was actually formed on January 19, 1968, and officially accepted the commitment on January 23, 1968. The mortgage brokerage fee was paid to First National Mortgage Corporation for obtaining the commitment.
Regarding the original agreements between Frey and Wicker, the trial court stated:
“The record contains little or no evidence on the exact nature of the original agreement between Wicker and Frey. Both seemed to have relied rather heavily on the fact that this endeavor would end like the previous ones, i. e., that Frey would obtain financing and be paid a one per cent commission. This court, in fact, finds that there was a meeting of their minds to the effect that if Frey obtained satisfactory financing that was accepted, he would be paid his usual fee of one per cent.” (Emphasis added.)
The trial court found that there was no evidence to support a finding that Frey had the exclusive right to obtain the financing and that plaintiff-appellant had *839 failed to sustain its burden of proof in this regard. An examination of the record reveals that there is sufficient basis to support the trial court’s finding that Frey did not have an exclusive brokerage agreement.
In addition, as the trial court aptly pointed out, a broker who has no exclusive rights to obtain financing can nevertheless recover if he was in fact the moving or procuring cause of the attainment of the financing. The trial court, however, found that there were no facts to support a finding of such in this case. Frey in his own testimony admitted that Mr. Foti did not use his work projects in preparing his package to be presented to New York Life. We agree with the trial court’s holding that Frey did not successfully perform his obligations under his agreement with Wicker to merit his claim for the brokerage fee. For this reason neither Wicker nor Nesser Gardens, Inc. can be held liable for the brokerage fee.
Appellant contends that Wicker and Nesser Gardens, Inc. are bound to it based on the assurances made to Frey by Wicker after the commission had already been paid to Mr. Foti that he or Nesser Gardens would pay Frey his fee.
The trial court held that the. testimony of the appellant and Wicker could not be reconciled and the plaintiff-appellant failed to carry his burden of proof in showing the existence of any such agreement. Frey insisted that Wicker promised to pay him in spite of the fact that he did not obtain the commitment and Wicker emphatically testified that all such promises were conditioned on his (Wicker’s) being paid by the corporation for his own services. The record reveals that Wicker was never paid for his services. It is a well-settled rule of law that an appellate court will not disturb the trial court’s finding of fact unless such is manifestly erroneous. Moore v. Bannister, La.App., 269 So.2d 291 (1972). The trial court’s determination of the credibility of various witnesses it observes and whose testimony it considers is entitled to great weight. Williams v. State Farm Mutual Auto Ins. Co., La.App., 266 So.2d 718 (1972). For these reasons, we do not find any basis upon which to disturb the trial court’s finding of fact. The allegations by the plaintiff that the corporation ratified Wicker’s acts thereby creating a corporate obligation to Frey, therefore become irrelevant as the trial court found that Wicker was never obligated to pay the appellant for Frey’s services.
For the reasons above stated, the trial court’s judgment is affirmed, all costs to be paid by appellant.
Affirmed.