345 So.2d 212 (1977)
LEE LUMBER COMPANY, LTD., Plaintiff-Appellant,
v.
INTERNATIONAL PAPER COMPANY, Defendant-Appellee.
No. 5870.
Court of Appeal of Louisiana, Third Circuit.
April 13, 1977.
Rehearing Denied May 10, 1977.
Writ Refused June 29, 1977.
Polk, Foote, Randolph, Percy & Ledbetter by George M. Foote, Alexandria and Robert *213 B. Eubank, Birmingham, Ala., for plaintiff-appellant.
Madison, Files, Garrett, Brandon & Hamaker by David I. Garrett, Jr., and Merwin M. Brandon, Jr., Monroe, Gold, Hall, Hammell, & Little and Donald Sharp, Alexandria, for defendant-appellee.
Before GUIDRY, FORET and HEARD, JJ.
FORET, Judge.
On September 18, 1973, plaintiff, Lee Lumber Company, Ltd., filed a petition against International Paper Company seeking to have the court declare a certain lease contract entered into between these parties on June 1, 1946, to be nudum pactum, and to be void without effect ab initio.
International filed a peremptory exception of prescription to plaintiff's action, which was sustained by the trial court dismissing plaintiff's suit.
Plaintiff then appealed to this court in a case entitled Lee Lumber Company, Ltd., plaintiff-appellant vs. International Paper Company, defendant-appellee, bearing Docket Number 5172 of this Court. We rendered a decision on October 8, 1975, reported at 321 So.2d 42, writ refused 324 So.2d 423 (La.1976).
On that appeal, plaintiff-appellee Lee raised the issue of the contract being null for a potestative condition, lesion, lack of consideration, as well as the issue of prescription. We held at that time that the trial court had correctly ruled insofar as it held that the plaintiff's causes of action for nullity of the lease on potestative condition, lack of consideration and lesion had prescribed but we reversed in part and remanded to the trial court for trial on the merits of the plaintiff's allegation with regard to failure of International Paper Company to comply with the provisions of the lease concerning payment of rentals and/or taxes. This is the issue which now confronts this court.
On June 1, 1946, Lee Lumber Company, Ltd. (hereinafter referred to as Lee) and International Paper Company (hereinafter referred to as International) entered into a lease agreement by which lessee, International, was obligated under the following rental provision:
"The rental to be paid by lessee to lessor shall be the sum of Fourteen Hundred and No/100 ($1400.00) Dollars per year, payable annually for each year during the month of January of each year. Rent for the years 1945 and 1946 has been paid concurrent with the execution and delivery of this lease. The rent for the last five (5) months of this lease shall be five-twelfths (5/12) of said rental of Fourteen Hundred and No/100 ($1400.00) Dollars. . . Lessor shall pay all taxes assessed against the lands subject to this lease during its entire term, but lessor shall not be liable for the taxes assessed against the timber and other property owned by the lessee situated on said lands. . . ."
Subsequently, on May 6, 1950, the parties thereto amended the original lease in these respects:
"Whereas the said contract of lease and rent provided that the Lee Lumber Company, Ltd., should not be liable for taxes assessed against the timber and other property owned by International Paper Company and situated on the lands subject to the lease.
"Now, Therefore, for and in consideration of the covenants and agreements by Lee Lumber Company, Limited, contained herein, International Paper Company hereby agrees to pay to Lee Lumber Company, Limited, annually throughout the remaining term of the said lease a sum equal to the excess of the amount of the property taxes paid by Lee Lumber Company, Limited, on lands subject to said lease over the amount of the rent paid by International Paper Company under the terms of said lease. International Paper Company further agrees to make such payment promptly upon the submission by Lee Lumber Company, Limited, of Tax receipts showing payment of taxes for the year currently due on all lands affected by the said contract of lease and *214 rent, provided said lands are assessed as `Cut-over pine lands' and the timber thereon not assessed separately."
We are asked to decide what rental payments (in what amounts and on what dates) International was obligated to pay to Lee and if International complied with its rental obligation. The determination of those issues will require this Court's construction of the above two rental provisions.
It is this Court's opinion that under the 1946 lease agreement, International was to pay annual rent in the amount of $1400.00 per year in January of each year, and that Lee was to pay taxes only on the land. (Reasonably inferred is International's obligation to pay taxes assessed as against the timber.) Under the 1950 amended lease, International was to pay $1400.00 per year in January of each year, and to pay the amount of taxes (on both land and timber) in excess of $1400.00 per year upon submission by Lee of tax receipts showing payment of taxes for the year currently due on all lands.
By stipulation of counsel, the following facts were admitted as true and correct:
At all times from the execution of the 1946 lease until the filing of suit, the taxes on both land and timber under the leased premises were assessed in the name of Lee; no demand has been made by Lee to International for payment of any other amount for rent and/or taxes; from the beginning of the lease term through the year 1950, payments made each year by International to Lee were in amounts equal to the applicable annual rental for each of the said annual periods under the lease agreement of June 1, 1946; and beginning with the year 1951, all payments made by International to Lee were in amounts equal to the total taxes assessed against and paid by Lee for the previous calendar year.
Thus, the determination of two legal issues is decisive of the outcome of this case: (1) Could Lee, in 1973, petition for the termination of the lease for International's failure to pay taxes for the years 1946 to 1950? (2) Could Lee, in 1973, petition for termination of the lease for International's failure to timely pay its annual rental of $1400.00 per year from 1951 to 1973?
The trial court held that plaintiff Lee was estopped from claiming a cancellation of the lease and pretermitted a resolution of the aforestated issues. We agree. As in this case, where a lessor, by his conductno demand for taxes during the years 1946 to 1950; accepting of rental payments for the years 1951 through 1973, after the date on which they were duecreates a custom by which the lessee is led into a false sense of security that it has complied with its obligations as lessee, the lessor thereby waives his right to cancel the lease and is estopped from so doing. Murphy Oil Corp. v. Gonzales, 316 So.2d 175 (La.App. 4 Cir. 1975), writ refused, 320 So.2d 558 (La.); Himbola Manor Apts. v. Allen, 315 So.2d 790 (La. App. 3 Cir. 1975); Blanchard v. Shrimp Boats of La., Inc., 305 So.2d 748 (La.App. 4 Cir. 1974); Moore v. Bannister, 269 So.2d 291 (La.App. 4 Cir. 1972); Farmers Gas Co. v. LaHaye, 195 So.2d 329 (La.App. 3 Cir. 1967).
The trial court found that plaintiff, Lee Lumber Company, because it was the party which inaugurated the practice for the determination and payment of amounts due under the lease agreement, as amended, was estopped from demanding the cancellation and voidance of the lease, having inaugurated and carried out the practice in question for all these years (1950 to 1973). The trial court found that Lee Lumber Company could not be heard to say that this practice was improper, and that the lease agreement in question should be cancelled.
It is noteworthy that the timber and the land involved in this lawsuit were never separately assessed. Counsel for plaintiff admitted at oral argument before us that it would be virtually impossible to go back and reconstruct a separation of the taxes on the land separate from that on the timber. Inasmuch as International paid all of the taxes assessed against Lee Lumber Company, who can say how much was for taxes on timber and how much was for taxes on land? We are of the opinion that it is no *215 concern to Lee Lumber whether International paid taxes on timber or not since International owned the timber. It is noteworthy that from 1950 through 1971, International reimbursed "taxes" to Lee Lumber in the amount of $105,814 for an average of $4,809.00 per year.
We are of the opinion that the trial court correctly applied the doctrine of equitable estoppel. For at least twenty-two years Lee Lumber Company accepted rental payments after the date on which they were due, and at a rental figure which it submitted to International. No other demand or notice of default was made by Lee Lumber on International. In our judgment, Lee Lumber created a custom by which the lessee, International, was led into a false sense of security that it was complying with its obligations as lessee. Consequently, we hold that the lessor thereby waived its right to cancel the lease on the grounds which it alleges, and is estopped from so doing.
For the foregoing reasons, the judgment of the trial court is affirmed, and all costs of this appeal are assessed against the plaintiff-appellant.
AFFIRMED.
GUIDRY, J., concurs and assigns written reasons.
GUIDRY, Judge, concurring.
I do not find it necessary to rely on estoppel in finding for the defendant-appellee, although I agree with the majority that if reliance thereon was necessary the plea should be sustained. Rather, I concur in the result finding that International has complied with its rental paying obligation under the lease which plaintiff now seeks to cancel.
I do not consider the original contract as imposing any obligation on International in favor of Lee Lumber Company, that the former pay the taxes on the timber. The original contract provides for payment of the taxes assessed against the lands by Lee. The contract further stipulates that Lee shall not be liable for the taxes assessed against the timber and other property owned by the lessee situated on said lands. This stipulation, in my opinion, does not give rise to a reasonable inference, that International obligated itself to Lee that the taxes on the timber would be paid in default of which the contract could be cancelled.
Standing timber is property susceptible of being acquired separately from the land on which it grows and is assessable separately to the owner of the timber, when the two estates, i. e., fee and timber, are subject to different ownerships. LSA-R.S. 9:1103; Globe Lumber Company v. Lockett, 106 La. 414, 30 So. 902 (1902); Brown v. Hodge-Hunt Lumber Company, 162 La. 635, 110 So. 886 (1927). LSA-R.S. 47:1958. International's obligation to pay the taxes on the timber estate, owned separately by it, ran in favor of the taxing authority and not Lee Lumber Company. In my opinion, International's obligation under the original lease was to pay an annual rental of $1400.00 per year. The evidence indicates that International faithfully made these rental payments.
Under the 1950 lease amendment International assumed the additional obligation to pay a sum equal to the excess of the amount of the property taxes paid by Lee, on lands subject to the said lease over the amount of the rent paid by International provided said lands are assessed as "Cutover pine lands and the timber thereon is not assessed separately". The majority correctly finds that under the amended lease:
"International was to pay $1400.00 per year in January of each year, and to pay the amount of taxes (on both land and timber) in excess of $1400.00 per year upon submission by Lee of tax receipts showing payment of taxes for the year currently due on all lands."
The evidence shows that International faithfully performed this obligation until Lee Lumber Company (in the year 1973) refused to accept further tender of such annual payments contending that the lease was null for having been breached by International. In my opinion, International has complied with its rental paying obligations *216 under the subject lease. Accordingly, I concur in the result reached by the majority.