358 So.2d 880 (1978)
John POPOVIC and Martha Popovic, Appellants,
v.
FLORIDA MECHANICAL CONTRACTORS, INC., a Florida Corporation, Appellee.
No. 77-425.
District Court of Appeal of Florida, Second District.
May 17, 1978.
John P. Cardillo and William D. Keith of Monaco & Cardillo, Naples, for appellants.
Charles L. Bigelow, Jr. of Bigelow & Winesett, Fort Myers, for appellee.
OTT, Judge.
Appellant/landlord sued the appellee/tenant for unpaid rentals and taxes pursuant to a written commercial lease of a warehouse. The tenant defended on the grounds that the landlord unreasonably withheld consent for a sublease of the premises. The trial court upheld this affirmative defense of the tenant and ruled that it constituted an absolute defense to the landlord's action on the lease. We reverse.
The tenant initially was the owner of the premises in question (a large warehouse and yard) and negotiated a sale thereof to the landlord in June 1975 with a 5 year written leaseback arrangement.
The provisions of the lease agreement insofar as pertinent to this decision were as follows:
4. Repairs. Tenant shall take good care of the leased premises and shall, at Tenant's sole cost and expense, make all repairs in and to the leased premises, interior and exterior, ordinary and extra-ordinary, structural and otherwise ... and at the end or other expiration of the term, Tenant shall deliver up the leased premises to the Landlord in good order and condition... .
5. Real Estate Taxes, etc. Tenant shall, during the term of this Lease ... pay and discharge as soon as the same shall become due and payable all real estate taxes... *881 [and other charges or impositions not here material.]
6. Net Lease. This is to be a "Net" Lease with the intent hereunder that the Landlord shall not be subjected to any expenses in connection with the use, maintenance or ownership of the premises at any time during the term of this Lease. Landlord shall not be required to provide any services or do any act in connection with the leased premises except as specifically provided herein, and the rent, additional rent, and other charges reserved hereunder shall be paid to Landlord without any claim on the part of Tenant for diminution or abatement, ... and the fact that Tenant's use and occupancy of the leased premises may be disturbed or prevented from any cause whatsoever ... shall not in any way suspend, abate, or reduce the rental to be paid hereunder except as otherwise specifically provided in this Lease.
8. Alterations. Tenant shall have the right to make changes or alterations to the building on the leased premises, subject to prior written consent of the Landlord, which said consent shall not be unreasonably withheld.
9. Assignment and Subletting. Tenant or its successors shall have the right to assign or sublet the leased premises in whole or in part after having first obtained the prior written consent of the Landlord which consent shall not be unreasonably withheld upon condition, however, that Tenant herein shall continue to remain liable notwithstanding such assignment or sub-lease for the future performance of all the terms, covenants and conditions of this Lease and provided, further, that in the event of an assignment or in the event of a sub-lease of more than 50% of the leased premises, the assignee or sublessee in each and every instance shall agree in writing, duly executed and acknowledged in form for recording, to perform all of the terms, covenants and conditions on the Tenant's part to be performed hereunder and shall assume payment of such portion of the rental and additional rental and other charges hereunder... . Such assumption agreement, together with a copy of such assignment or sub-lease shall be delivered to the Landlord within five days after the date of execution thereof. No assignment or sub-lease ... shall have any validity except upon compliance with the conditions herein set forth.

13. Default or Desertion by Tenant. If the leased premises, ... shall become vacant or deserted . .. or if default be made in the payment of rent or any item of additional rent ... and said default shall continue for a period of ten days after written notice to Tenant; or if Tenant shall assign this Lease or sublet the premises except as hereinabove provided for ... or if default be made in the performance of any of the terms, covenants, and conditions in this Lease contained on the part of Tenant to be kept or performed ... and if [such] ... default shall continue for a period of thirty days after written notice and demand ... Landlord may ... terminate this Lease ... but Tenant shall remain liable as hereinabove or hereinafter provided . . and Tenant shall pay at the same time as the rent becomes payable under the terms hereof, a sum equivalent to the rent and additional rent reserved herein, and Landlord may relet the premises or any part or parts thereof ... without releasing Tenant from any liability... . The failure ... of Landlord to relet the premises or any part thereof shall not release or affect Tenant's liability.

*882 18. [After providing for the types and quantities of insurance and the type companies] ... Tenant shall have the privilege of procuring all of such insurance through its own sources. Tenant shall deliver to Landlord the aforesaid policies of insurance (except that Tenant may deliver certificates evidencing such insurance in the event blanket policies have been issued), with proof of payment of the premiums therefor, at or before the commencement of the terms hereof. ...
21. No Waiver. Failure on the part of Landlord or Tenant to complain of any action or non-action on the part of the other shall not be deemed to be a waiver of any of their respective rights hereunder....
24. Default by Landlord. Anything in this Lease to the contrary notwithstanding, it is specifically agreed that there shall be no enforceable default against Landlord ... unless notice of such default be given by Tenant to the Landlord in which Tenant shall specify the default or omission complained of, and Landlord shall have thirty days after receipt of such notice in which to remedy such default... . [Emphasis added.]
At the trial an exchange of letters was stipulated into evidence as follows:
(1) A letter dated October 21, 1975 in which the landlord notified the tenant that it had "... not received a copy of [the insurance policies] or any other proof that same is in existence and I would appreciate your furnishing me with satisfactory evidence that the insurance is in full force and effect... ."
(2) A letter dated November 3, 1975 in which the landlord notified the tenant that it [the tenant] "... does not appear presently to be occupying the leased premises, but that, in fact, the premises appear to have been sublet to another tenant  not only without the prior written consent of [landlord], but also without even the courtesy of a consultation thereon." [Emphasis in original.]
(3) A letter dated December 2, 1975 in which the tenant replied that "... as soon as the sublease has been finalized, we will submit it for acceptance... ."
(4) A letter dated December 12, 1975 in which the landlord requested the tenant to advise of its intentions as to the property and the progress, if any, on a potential sublease.
(5) A letter dated January 6, 1976 in which the tenant advised the landlord that due to the severe downturn in its business it had no further need for the warehouse space; that it had a prospective sublessee on the same terms and conditions as the original lease "... provided he [sublessee] could obtain consent to divide the warehouse into individual storage units which he could, in turn, sublease... . should the space not be needed by him in his business."
In this letter the tenant advised that it understood that the landlord did not "... desire to go along with the assignment or subleasing of the premises ... unless the monthly rental is increased by $500.00. This would seem . . to be an arbitrary position and in violation of the lease."
(6) A letter dated January 19, 1976 in which the landlord advised the tenant that a sublease to the proposed sublessee on the same terms and conditions as the original lease would be satisfactory but that it "... would not be willing to consent to Mr. Ross' division of the warehouse into individual storage units." The letter further suggested a sublease of only a portion of the premises if that was all the sublessee required. (This, in effect, denied or corrected any arbitrary demand for rental increase but flatly refused consent to the proposed alterations.)
(7) A letter dated March 9, 1976 in which the landlord requested a response to its letter of January 19, 1976.
(8) A letter dated March 12, 1976 in which the tenant advised the landlord that it considered *883 landlord's "... arbitrary refusal of a sub-lease or assignment to Tom Ross [as] a breach of the lease... ."
(9) A letter dated March 17, 1976 in which the landlord denied any breach of the lease agreement on its part, but on the contrary asserted that the tenant had "... failed to make both the February and the March Lease payments and there is, therefore, presently due and owing ... rental in the sum of $2,450.00... . in default of paragraph 2 of the Lease agreement (and that) pursuant to paragraph 13 thereof, please accept this letter as written notice of said default." The letter further advised that landlord had received a second notice of payment due for the 1975 taxes and demanded payment of same by no later than March 31. The letter concluded by advising that if the rental arrearage was not paid within 10 days of the receipt of the letter suit would be instituted for all sums due and owing or that might become due and owing pursuant to the lease agreement.
In addition, the tenant conceded the following facts in its own testimony at trial:
1. That it had vacated the premises and turned possession of the total property over to a proposed sublessee in October 1976 without notifying the landlord or securing his prior written approval and without furnishing a fully executed and recordable sub-lease proposal. The tenant did claim that it had prepared a sublease and submitted it to the proposed sublessee (Ross) but that Ross failed to execute it.
2. That although it claimed to have procured all of the insurance required by the lease it conceded that it had never furnished the landlord with the policies, certificates, proof of payment of premiums or any other evidence of insurance in full force and effect as demanded by landlord's letter of October 21, 1975.
3. That it had never paid the 1975 taxes.
4. That at the time it sold the property and leased it back there were roof repairs needed together with repair of resulting interior damage. Neither had been accomplished.
The above uncontradicted facts clearly establish that the tenant not only failed to comply with paragraph 9 of the lease which required the prior written consent (or refusal) of the landlord to a written and fully recordable sublease, but it was also technically in violation of paragraph 4 (repairs), paragraph 5 (taxes), paragraph 13 (vacating the premises and placing another in possession), and paragraph 18 (proof of insurance). This is hardly a position entitling the tenant to the relief requested. Since, however, the parties and the trial court chose to address solely the question of whether the facts established an unreasonable refusal of the landlord to a sublease (more accurately an unreasonable refusal to consent to alterations by the proposed sublessee) we turn our attention to a consideration of that issue on its merits.
An examination of the record reveals that the tenant has failed to carry the burden of establishing that the landlord's withholding of consent to the sublease was unreasonable or arbitrary. Although the tenant contends that the reason the landlord withheld consent was to get more rent, there is meager evidence in this regard. The only evidence even suggestive to this effect is the testimony of Ross (the prospective subtenant) who testified that Popovic (the landlord) stated that if Ross turned the property into a mini-warehouse that the rent would go up. When considered in the light of all the other testimony the most that can be said is that the landlord refused  at least without some adjustment in rent  to consent to any such alteration of the premises by the proposed sublessee. We note in passing that no executed and recordable sublease commitment and assumption was submitted on this or any other basis.
Other aspects of the record strongly indicate that the landlord's withholding of consent was far from arbitrary if not eminently reasonable.
The tenant subpoenaed Ross to the final hearing. His testimony may be summarized as follows:

*884 1. He had only been in the plumbing supply business approximately 9 or 10 months (since January 1975); that his inventory was at its peak at the time of the sublease negotiations; he was unsure how it would work out; that he had never operated a mini-warehouse; and that he didn't know what would be involved in and had not made a specific proposal on altering the premises to such an operation.
2. He thought a sublease of the premises would be profitable if he had the conversion option available with no rental increase and, under such conditions, would have been willing to enter into a sublease.
3. That the landlord told him he would not consider the change without a rental increase.
The landlord's deposition, taken before trial, established that he found Ross in possession when he went to collect the November 1975 rental payment; that while questioning Ross as to his occupancy he learned essentially all of the above and, in addition, that Ross was not doing well in the plumbing business, was also considering going into the furniture business and that he [Ross] could not handle the lease with just his plumbing business; that he [the landlord] had been in the construction business all his life, had worked on and operated warehouses before, was quite familiar with modifying premises to mini-storage units and that it required extensive structural changes to the building, required complete demolition and rebuilding of the interior to restore the building to its original (or any other) purpose.
At trial there was no evidence offered by the tenant to the contrary.
In Whitman v. Pet, Incorporated, 335 So.2d 577 (Fla. 3d DCA 1976) our sister court had occasion to consider whether the landlord had unreasonably withheld consent to an assignment of the lease. The assignment portion of the lease stated as follows:
Tenant shall not have the right to . . assign ... sublease or in any manner dispose of this Lease or any estate or interest therein without the previous written consent of the Landlord, which consent shall not be unreasonably withheld... .
The lease contained an actual proviso requiring any successor to be of substantially the same quality as the tenant. When the tenant attempted to assign to another, the landlord notified the tenant of its termination of the lease. The Third District Court of Appeal found that although the prospective assignee was financially sound, the evidence strongly suggested that the prospective assignee was not of the same quality as the assignors. In doing so it reversed the contrary conclusion of the trial court.
In Johnson v. Jaquith, 189 So.2d 827 (Fla. 4th DCA 1966) the Fourth District Court of Appeal held for the lessor for similar reasons. That court reversed the lower court's finding that the lessor had unreasonably refused to consent to the assignment of the lease. The lease provided that "`the lease shall be fully assignable provided, however, that the consent of the [lessor] is obtained to such assignment, which consent, however, shall not be unreasonably withheld.'" What occurred was that the lessee informed the lessor that it might wish to assign the premises. Then, about three months later, the lessee informed the lessor that the premises had been assigned. Along with this communication was a check from the assignee for the rent. The lessor refused to consent to the assignment on the ground that the premises were a mess, and more importantly, that the lessor was unsure that the assignee would be able to meet the obligations under the lease. The court held that the lessor acted reasonably in stating that it would have accepted the assignment if the assignee could establish its solvency (which it never did). The court noted that the lessee's offer to guarantee payment of the rental (explicitly required in that case) was insufficient since that agreement was not one for the lessee to remain personally liable for breach of the other lease covenants.
We think it axiomatic that the landlord has the right to expect reasonably prompt *885 and reliable performance of all lease covenants  rental payments being only one  and that this is directly related to the evidence as to the dependability, solvency and stability of the actual occupant. This is particularly true in a total performance lease of the type employed in this instance.
In Whitman, the court described the role of the appellate court in such a case:
Generally, an appellate court will not set aside the findings of fact by the trial court in a non-jury case unless there is no substantial evidence to sustain them, or they are contrary to the manifest weight of the evidence or the legal effect of the evidence, or are induced by an erroneous view of the law. 335 So.2d at 579; See Holland v. Gross, 89 So.2d 255 (Fla. 1956); Jaquith, supra.

Both the Whitman and Jaquith cases held that the burden of proof was upon the lessee to prove that the lessor had unreasonably withheld its consent to assignment of the lease.
Generally speaking, courts of other jurisdictions have rejected refusals to consent where arbitrary, unreasonable or unfair on their face. For example, in Chanslor-Western Oil & Development Co. v. Metropolitan Sanitary Dist., 131 Ill. App.2d 527, 266 N.E.2d 405 (1970) the court held that racial grounds for refusal were unreasonable. Cf., Krieger v. Helmsley-Spear, Inc., 62 N.J. 423, 302 A.2d 129 (1973) wherein refusal because the proposed subtenant was then a tenant occupying office space in another building owned by landlord was held unreasonable.
Similarly, refusal of consent based upon a religious or moral objection of the landlord has been viewed as unreasonable or arbitrary. See American Book Co. v. Yeshiva University Development Foundation, Inc., 59 Misc.2d 31, 297 N.Y.S.2d 156 (Sup.Ct. 1969).
Clearly the landlord, in this instance, did not withhold consent on a patently arbitrary ground. In the absence of such there must be competent substantial evidence of circumstances that establish the refusal as unreasonable. See, e.g., Moore v. Bannister, 269 So.2d 291 (La. App. 1972) where the lessor had been aware of the sublease for several months prior to raising any objection, knew the sublessee was a "reputable, substantial businessman" who was paying more than double the original rent for the same business use of the premises.
We hold that the uncontroverted essential facts of this case fail to establish either an arbitrary or an unreasonable refusal.
Reversed and remanded for further proceedings consistent with this opinion.
SCHEB, Acting C.J., and DANAHY, J., concur.