416 So.2d 829 (1982)
SUN FIRST NATIONAL BANK OF ORLANDO, As Trustee, and Hattie Dann, Appellants,
v.
Frederick K. GRINNELL a/k/a Fred K. Grinnell, John G. Pierce, William C. Demetree and Jack C. Demetree, Appellees.
No. 81-972.
District Court of Appeal of Florida, Fifth District.
June 9, 1982.
Rehearing Denied July 9, 1982.
*830 James B. Byrne, Jr., Orlando, for appellants.
James O. Driscoll of Driscoll, Langston, Layton & Kane, P.A., Orlando, and John G. Pierce, Orlando, for appellees.
*831 COWART, Judge.
This case involves the allegedly improper refusal of a mortgagee to release property under a partial release provision of a mortgage.
In December of 1970, Ernest C. and Hattie Dann, as sellers, and two of the appellees, as buyers, entered into a contract for the sale and purchase of 19.34 acres of land for a purchase price of $255,000, payable $66,250 down and the balance of $188,750 to be evidenced by a promissory note payable in 21 periodic annual payments of principal and interest and secured by a purchase money mortgage. The contract provided that the mortgage would contain a subordination clause and a partial release provision to the effect that:
Upon written consent of the Mortgagee, which said consent shall not be unreasonably withheld, property may be released from the lien of this mortgage upon payment to Mortgagee of the portion of the balance due on the note and mortgage which the number of acres requested to be released bears to the total acreage covered by this mortgage.
Thereafter, the sellers conveyed said property subject to said contract to the predecessor of appellant bank as trustee under an inter vivos trust. In December, 1971, the real estate transaction contemplated by the contract was closed and the appellant's predecessor trustee-bank accepted the balance of the down payment, delivered a deed and accepted the buyers' note and mortgage with the release provision, all as provided in the contract. The mortgagors took possession of the land and improvements and made certain payments on the note. In May of 1977, the mortgagors requested a partial release of 8.092 acres. The mortgagee's agent responded that 4.1446 acres was "the maximum we feel can be released ... at this time." On September 26, 1977, the mortgagors responded that they believed they were entitled to a release of 8.092 acres, but, since there was no question about a release of 4.1446 acres, requested a partial release of that acreage to be delivered at the earliest possible date. The mortgagee did not respond to the letter of September 26, 1977, nor to two follow-up letters. After some disputes and payments and delay, on December 27, 1977, the mortgagee confirmed that all payments were then current and stated "we are now in the process of executing the partial release of mortgage." Nevertheless, the mortgagee did not deliver the partial release, despite further requests. Finally, by letter dated June 23, 1978, the mortgagee notified the mortgagors that no property would be released because the unpaid balance on the note would be inadequately secured by the value of the mortgaged property if a release was granted.
Alleging the background facts and that the mortgagee had wrongfully denied a partial release and that the mortgagors had therefore elected to rescind the sale, the mortgagors brought an action against the mortgagee and Hattie Dann.[1] Count I sought rescission of the original land sale contract, cancellation of the deed and the purchase money note and mortgage and restitution of all sums paid and expended in connection with the purchase, interest thereon and court costs. Count II sought money damages for breach of the mortgage provision for partial release of secured lands upon partial payment of the secured indebtedness. The mortgagee answered, alleged certain affirmative defenses and counterclaimed for foreclosure of the mortgage for non-payment of an accelerated principal balance of $142,400.53.
After an arduous trial, the trial court cancelled the contract, rescinded the deed, note and mortgage and entered judgment in favor of the mortgagors and against the *832 mortgagee and Hattie Dann in the sum of $333,141.58.[2]
The bank and Hattie Dann appeal, arguing four points:
(1) That the mortgagee did not unreasonably withhold a partial release of the mortgaged property in view of the mortgagor's prior late payments, the failure of the mortgagors to properly maintain the mortgaged property and an appraisal indicating that the mortgaged property was worth less than the then balance of the secured indebtedness.
(2) That, upon rescission, mortgagee should have been allowed, as restitution, a reasonable amount for the use value for the nine years and seven months that mortgagors possessed the security property.
(3) The remedies of rescission and damages for breach of contract being mutually exclusive, the mortgagor should have been required before trial to have elected remedies.
(4) Undetailed expert witness fees should not have been awarded as costs without proof of their reasonableness.
With all due respect to counsel and the trial court, we believe that there are certain fundamental misconceptions inherent in this litigation. The original contract for the sale and purchase of land is the usual bilateral executory contract, each party being both a promisor and a promisee. The seller promises to convey title to land by delivery of a deed to the buyer in exchange for the buyer's promise to pay the seller the purchase price. The two sets of promises are mutually dependent and conditional, requiring concurrent performances. At the "closing," both parties simultaneously and fully discharge their promises and contractual duties by performance when the seller delivers a proper deed and the buyer delivers the purchase money in full.
The first complexity arises when the seller agrees to accept as consideration both a buyer's promise to deliver some money at closing and the buyer's formal promise to pay the balance of the purchase price in future installments (a promissory note) and to secure the promised future performance by a lien against the subject property in the form of a purchase money mortgage. Again, at "closing" both parties simultaneously and fully discharge their promises and contract duties by performance when the seller delivers a proper deed and the buyer delivers purchase money due at closing and the promised note and mortgage. It is important to recognize that, while such sales contracts customarily state a total purchase price as composed of an earnest money deposit, cash at closing, balances on assumed mortgages and balances evidenced by the buyer's promissory note secured by a purchase money mortgage, the true nature of such sales agreement is that the buyer's promise is not an agreement to pay the full purchase price in money but is a promise to make and deliver secondary contracts in the form of a promissory note and mortgage, just as he may "pay" part of the purchase price by assuming some existing indebtedness already secured by an existing mortgage on the property. That this is true is demonstrated by the fact that, if the deferred portion of the purchase price, or part of it, is not paid, the then owner of the indebtedness that originated in the real estate sale, whether that owner be the original *833 seller or some subsequent owner, brings action in debt, not on any promise in the original contract, but on the buyer's promissory note and makes a claim for security against the land, not under the original contract, but under and through the purchase money mortgage. Thus, as it relates to a note and mortgage given as part of the consideration, the land sale contract is a true "contract to make a contract" and the purchase money note and mortgage when later executed are in performance and satisfaction of a provision of the original sales contract, and not mere memorials of it. While the mere execution of such note and mortgage discharges the buyer's contractual duty to provide it as the deferred portion of the purchase price, the contractual duties under the note and mortgage are substituted for the original contractual duty under the sales contract that is discharged and they become the operative expressions of assent and of the contractual relationships then existing between the parties to them or their subsequent assignees.
Sometimes, as here, the land sales contract provides that the seller agrees to accept, as security for a promissory note which is to be given as part performance, a mortgage (which mortgage is also part performance) which contains a covenant to subordinate or to release certain lands from the lien of the mortgage under certain circumstances. Obviously, such a covenant in a mortgage is not personal, merely obligating the seller, but is collateral to and "runs with" the mortgage, burdening it in the hands of the original mortgagee or anyone who subsequently owns the mortgage, similar to the way that the mortgage itself burdens the land with an encumbrance while it is owned by the original buyer (the mortgagor) or by anyone who thereafter owns the land. The release provision exists in favor of the owner of the land subject to the mortgage, is for his benefit, and constitutes an obligation of the original mortgagee or any subsequent owner of the mortgage indebtedness.
Just as the execution of the note and mortgage fulfills the buyer's contractual promise to deliver such note and mortgage, likewise the acceptance by the seller of the mortgage with the positive covenants requiring subrogation and partial release of security constitutes performance in satisfaction by the seller of the provision of the sales contract that the mortgage would contain such a covenant. The only way the contract seller could breach the provision of the sales contract relating to the subrogation and partial release covenants would be for the seller to refuse to accept a mortgage because it contained such covenants.[3] Once the mortgage containing the covenants is accepted by the seller, insofar as the subrogation and partial release clauses are concerned, the fact that the mortgage originated to secure purchase money is immaterial to the relationships of the parties and the remedy of the mortgagor (or subsequent landowner subject to such mortgage) for breach of that provision by the mortgagee (or subsequent owner of the mortgage indebtedness) is the same as that of any other owner of lands upon breach of such a release provision by a mortgagee. Of course, either the original seller or any subsequent holder of the mortgage[4] could, as mortgagee, breach the subrogation and partial release covenants of the mortgage by failing to abide by the terms of the covenants themselves, but in that event the landowner cannot rescind the mortgage because those covenants of the note and mortgage relating to payment of money and *834 those relating to subrogation and partial release are independent and unconditional. The landowner who is the beneficiary of the subrogation and partial release covenants in the mortgage is, therefore, relegated to damages at law for their breach.
In this case, the original contract for sale and purchase was fully performed when the real estate transaction was closed in December 1971, the exact performance of all duties on both sides at that time necessarily discharged those duties and the contract, being fully executed, ceased to be a contract[5] and could not thereafter be breached or rescinded for breach. Such a fulfilled and exhausted contract has historical, but no legal, significance and is not subject to rescission because of any breach of independent covenants that may have originated and come into existence as the result of some performance of its provisions. Accordingly, the remedy of rescission and cancellation of the original contract for sale and purchase of land in this case was not available for any alleged breach of the covenant for partial releases contained in the mortgage given as part performance of the original contract. Therefore, the final judgment rescinding and cancelling the original contract of sale and purchase and the resulting deed, note and mortgage, is hereby reversed.
We have reviewed the question of whether the mortgagee in fact and in law breached the release provision of the mortgage. That provision in this case differs from the usual provision as to such matters in that under the usual provision the right to partial releases is absolute, while here the provision for release of land in the ratio that the amount paid on the promissory note bears to the original amount of secured indebtedness is conditional upon the mortgagee not "unreasonably" withholding such partial release. There appears to be a dearth of legal authority construing such a provision, but a profitable analogy can be made to cases involving clauses in leases which provide for subleasing only with the consent of the lessor, which consent likewise is not to be "unreasonably withheld." Cases collected in Annot., 54 A.L.R.3d 679 (1973) ("Construction and Effect of Provision in Lease That Consent to Subletting or Assignment Will Not Be Arbitrarily or Unreasonably Withheld"), indicate that the standard to be applied to determine whether consent was unreasonably withheld is that of the reasonably prudent man and that consent is not to be arbitrarily withheld. The court in Mitchell's, Inc. v. Nelms, 454 S.W.2d 809 (Tex.Civ.App. 1970), defines "unreasonable" in the context of one of these lease provisions as follows:
Webster's New International Dictionary, 2d Edition, defines "Unreasonable" as:
Not conformable to reason; irrational; also, not governed or influenced by reason. Beyond the bounds of reason or moderation; immoderate; exorbitant.
Some courts have said that the term "unreasonable" conveys the same idea as irrational, foolish, unwise, absurd, silly, preposterous, senseless, and stupid.
* * * * * *
Another court has said that the determination of what is "unreasonable" is one where, under the evidence presented, there is no room for difference of opinion among reasonable minds.
454 S.W.2d at 814. In Whitman v. Pet Inc., 335 So.2d 577 (Fla. 3d DCA 1976), cert. dismissed 348 So.2d 951 (Fla. 1977), the court stated that the burden was on the lessee to show that consent was unreasonably withheld and was not on the lessor to show that consent was reasonably withheld. In order to establish unreasonable withholding, "there must be competent, substantial evidence of circumstances that establish the refusal as unreasonable." Popovic v. Florida Mechanical Contractors, Inc., 358 So.2d 880, 885 (Fla. 2d DCA 1978).
Here, the appellees did not meet their burden of establishing that refusal to consent to a partial release was unreasonable. In fact, the opposite was established. The uncontradicted evidence showed that Sun Bank's refusal to execute the partial *835 release was based on a poor payment history, an appraisal of the property which showed the value of the property to be less than the outstanding balance on the note and the condition of the property. These cannot be said to be arbitrary considerations on the part of the bank. Appellees argue that their appraisal showed the property to be worth more at the time of the request for release than the outstanding balance on the note and that the trial court accepted the mortgagor's appraiser's testimony to be convincing and rejected that of the bank's appraiser. However, the question here is not what the value of the property was at the time the release was requested; the question is whether the mortgagee was justified in relying on its appraiser's appraisal in refusing the release. The appraiser was the mortgagee's regular appraiser and it was not shown that his appraisal was unreasonable on its face, so that the bank could not reasonably rely on it; consequently, the trial court erred in finding that the mortgagee's refusal of a partial release was unreasonable.
The trial judge's determination that refusal was unreasonable was based primarily on the time lapse between the first request and the eventual refusal. We do not condone the mortgagee's delay in communicating its decision not to execute a release under the circumstances, but note that if appellees had been entitled to a release, they might have a cause of action for damages against Sun Bank for delaying execution of the release. However, since they were not entitled to a release under these facts, no damages accrued.
Other than as included in this opinion, we do not deem it necessary to consider the appellant's formal points on appeal. We reverse the final judgment herein and remand the cause for the trial court to consider appellant's suit to foreclose the mortgage.
REVERSED AND REMANDED.
ORFINGER and FRANK D. UPCHURCH, Jr., JJ., concur.
NOTES
[1] The complaint joins Hattie Dann as a party defendant but does not mention her other than for the recital that she was one of the original contract vendors and a grantor to appellant's predecessor trustee-bank. No motion was filed testing the sufficiency of the complaint to state a cause of action against Hattie Dann. A careful examination into the plaintiff's theory for joining Hattie Dann would have revealed conceptual infirmities in the plaintiff's original cause of action which might have averted much of the trial and this appeal.
[2] This sum apparently comprised the following:

Down Payment $ 66,250.00
Mortgage Payments,
 principal and interest 164,666.81
Real Estate Taxes Paid 24,372.66
Miscellaneous 100.00
Court Costs 4,254.62
Pre-judgment Interest on
 all Disbursements 90,521.28 $350,165.37
 _________
Less
Net Receipts from Rental
 of House 752.10
Net Income from Sale of
 Fruit and Rental of
 Signs 8,026.31
½ of Finder's Fee 12,500.00 21,278.41
 _________ ___________
 $328,886.96
Apparently the court cost
 figure of $4,254.62 was
 added in again 4,254.62
 ___________
 TOTAL $333,141.58

[3] For the unusual case where this occurred, see Murrell v. Robertson, 402 So.2d 590 (Fla. 5th DCA 1981).
[4] The original mortgagee and all subsequent owners of the mortgage indebtedness are bound by the covenants in the mortgage, not because of any original expressed contractual assent (payees of promissory notes and mortgagees of mortgages customarily do not sign or otherwise expressly assent or agree to the terms of such documents), but because the mortgagee or subsequent owner of the mortgage claiming the benefits of the mortgage is bound by the covenants contained therein, as grantees who accept the benefits of deeds are bound by the covenants in them that might run in favor of others.
[5] See 1 S. Williston, A Treatise On The Law of Contracts § 14 (3d Ed. 1957).