[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12742
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 13, 2010
JOHN LEY
CLERK

D.C. Docket No. 3:08-cv-00463-WS-MD

THE MICHAEL TITZE COMPANY INC.,
A Florida Corporation,

Plaintiff - Appellant,

versus

SIMON PROPERTY GROUP, INC.,
A Delaware Corporation,
THE LAMAR COMPANIES,
A Louisiana Corporation,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(October 13, 2010)

Before TJOFLAT, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

The Michael Titze Company appeals the summary judgment in favor of the Simon Property Group and The Lamar Companies. Titze sued Simon and Lamar for breach of contract and duties of good faith and fair dealing, tortious interference, breach of fiduciary duty, and a civil conspiracy to deny Titze the opportunity to install a billboard on its property. We affirm.

## I. BACKGROUND

We divide our discussion of the background in two parts. First, we discuss the underlying facts. Second, we discuss the complaint filed by Titze and the summary judgment in favor of Simon and Lamar.

*A. Titze's Property and Its Business Relationships with Simon and Lamar*

In 1970, James Reeves purchased an outlot of a shopping mall from Pensacola Associates. Reeves and Pensacola Associates executed an operating agreement that contained restrictive covenants to run with the land and bind the parties and their successors for fifty years. Although Reeves bought the property to build a bank, the property later was rezoned to build a restaurant.

In 1984, Titze purchased a leasehold interest in a restaurant on the Reeves property. In 1986, Titze opened a different restaurant on the property. Later,

2

Titze exercised an option to purchase the property.

Unbeknownst to Titze, the property was subject to restrictive covenants, two of which required Titze to obtain permission from Simon, the current owner of the mall, to construct on or improve the property and not to use the property in a manner that would conflict with the interests of or detract from the shopping mall:

> 2. <u>Site Plan Approval</u>.
>
> Prior to commencing any construction or improvements on Parcel D, [the purchaser] agrees to cause all grade, elevation, site and building plans, relating to the development and improvement of said Parcel D to be submitted to [the owner of the mall], for . . . approval [by the owner], to the end that Parcel D will be compatibly developed and improved with the balance of The Total Shopping Center Site.
>
> . . .
>
> 7. <u>Use of Parcel D</u>.
>
> The parties do hereby agree that the [purchaser of Parcel D], his successors or assigns, may make any use of Parcel D, except that no such use may in any way, conflict with, detract from or impair, any of the rights, duties, covenants, obligations or liabilities of [the owner of the mall] or its successors . . . relating in any manner to the Total Shopping Center site . . . . If the [purchaser] ever operates a bank on said site and then ceases to operate said bank for any reason, any future use of said site shall be with the approval of [the owner of the mall] which approval will not be unreasonably withheld.

In 2003, Titze leased a portion of its property to Lamar to install a billboard without obtaining approval from Simon. The lease allowed Lamar "to make

necessary applications with, and obtain permits from, governmental bodies for the construction and maintenance of [Lamar's] advertising structure(s), at the sole discretion of [Lamar]" and provided that "[a]ll such permits [remained] the property of [Lamar]." Lamar retained the right to "terminate [the] lease . . . in the event that . . . in [Lamar's] opinion the location becomes economically or otherwise undesirable."

Lamar obtained a permit to build the billboard, but Titze delayed that construction to renovate its restaurant. While the billboard project was on hold, Simon Brand Ventures, a division of Simon, began negotiating with Lamar to place digital billboards on Simon-owned buildings throughout the United States.

In August 2004, Titze told Lamar to commence its construction of the billboard, but Lamar had to remove trees from an adjacent property that blocked a view of the proposed billboard. On August 20, 2004, Lamar wrote a letter to Greg Noble, the general manager of the mall, stating that Lamar had reached "the final stage of preparations to install a billboard structure at the Village Inn . . . adjacent to the mall," had obtained permits to replace five trees on an adjacent property and, because "[t]here [were] several options to achieve the desired [landscape appearance of the mall]," Lamar wanted to "solicit i[n]put[] from the mall before" replacing the landscaping.

4

On August 23, 2004, Noble emailed his supervisor, Scott Richardson, about the billboard. Noble opined that the billboard would be a "huge eyesore — especially considering the upcoming lifestyle component," and Noble asked Richardson to "have someone check the REA's [reciprocal easement agreements] . . . to see if this is allowed." The "lifestyle component" referred to a program by Simon to renovate the mall to create exterior retail shops and restaurants.

On August 30, 2004, Richardson emailed a response to Noble. Richardson stated that the billboard would spoil the aesthetics of the mall and suggested that Noble tell Titze that restrictive covenants banned the installation of a billboard, even though Richardson was not certain such covenants existed:

> I can't find any correspondence relating to this outlot since it was done well before we bought the mall. I would suggest that you contact the General Manager of the restaurant and inform him that we don't believe they have the right to install a billboard on their property as outlined in their Covenants, Conditions & Restrictions (CCR) document that was signed when they (or their developer) purchased the property. This may or may not be the case, but perhaps it will stall long enough to allow us to formulate a better argument. Unless you feel different, we ABSOLUTELY DO NOT WANT THIS TO HAPPEN in front of our mall that we are spending millions of dollars to improve.

According to notes made by Lamar on its letter to Noble, Noble left two voice messages on August 30 and September 1, 2004, stating that Titze could not install a billboard unless it was "approved by [the] mall."

On November 2, 2004, Noble wrote Titze a letter stating that the proposed billboard violated two provisions of the operating agreement, a copy of which Noble attached to the letter. Noble stated that paragraph 2 gave Simon the right to review plans to develop and improve Titze's property, and Simon did "not approve the billboard use since it is not compatible with the Shopping Center." Noble stated that paragraph 7 required Titze to obtain permission from Simon to change the use of the property, and the use of the property as a restaurant "did not include approval for the location and sale of billboard advertising within the parcel." Noble asked that Titze contact him with "any questions." Titze did not challenge the decision or submit plans for the billboard to Noble or Simon.

On December 3, 2004, Lamar offered to install the billboard but requested indemnification from Titze if the billboard had to be dismantled. Titze directed Lamar not to proceed with installation of the billboard. In May 2005, Titze and Lamar cancelled their agreement. Titze later sued its title company for failing to discover the operating agreement, and Titze settled the lawsuit for $35,000.

Lamar and Simon Brand Ventures executed an agreement for Lamar to install billboards on Simon's properties in January 2005. Lamar obtained permits to construct the billboards in March 2005, and Simon and Lamar executed subleases for the billboards in August 2005.

## B. Titze's Complaint and the Summary Judgment in Favor of Simon and Lamar

Titze filed a complaint against Simon and Lamar that alleged seven grounds for relief. Titze alleged that Simon and Lamar had breached their contracts and their duties of good faith and fair dealing with Titze and had conspired to deny Titze the opportunity to install a billboard on its property. Titze also alleged that Simon had interfered tortiously with the contract between Titze and Lamar, and Lamar had breached its fiduciary duty to Titze. Titze, Simon, and Lamar moved for summary judgment.

The district court granted summary judgment in favor of Simon and Lamar. The district court ruled that Simon had not breached its operating agreement with Titze because Simon had reasonable grounds to refuse to allow Titze to install a billboard. Titze "never submitted a request for approval to Simon" or "shared its billboard plans with Simon," which denied Simon the opportunity to assess the effect of the billboard on the mall or determine if the planned advertising would "conflict with the interests of the mall's tenants." The district court ruled that Lamar had not breached its contract with Titze by applying for permits to install billboards on Simon property because Lamar could not complete its contract with Titze. Because Simon and Lamar had not breached their contracts with Titze, Titze could not establish that Simon and Lamar had breached their duties of good

faith and fair dealing. The district court also ruled that Titze had failed to establish that Simon and Lamar tortiously conspired to deprive Titze of the opportunity to install a billboard on its property. The district court concluded that Simon had not interfered tortiously with the contract between Titze and Lamar because Simon could deny Titze permission to install a billboard. The district court also ruled that the business dealings between Lamar and Titze did not create a fiduciary relationship that obliged Lamar to act in the best interests of Titze.

## II. STANDARDS OF REVIEW

We review a summary judgment <u>de novo</u> and view the evidence in the light most favorable to the nonmoving party. <u>Callahan v. Point Clear Holdings, Inc.</u>, 579 F.3d 1207, 1212 (11th Cir. 2009). Summary judgment should be entered when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## III. DISCUSSION

Titze challenges the summary judgments in favor of Simon and Titze. Titze contends that there are material issues of fact about the relationship between Simon and Lamar and their alleged efforts to deny Titze of the opportunity to install a billboard on its property. Titze's arguments fail.

*A. Titze Failed to Establish that Simon Breached the Operating Agreement*

Titze argues that Simon breached the operating agreement by withholding unreasonably its approval to install a billboard on Titze's property, but we disagree. Under Florida law, which the parties agree applies, "the standard to be applied to determine whether consent was unreasonably withheld is that of the reasonably prudent man and that consent is not to be arbitrarily withheld." Sun First Nat'l Bank of Orlando v. Grinnell, 416 So. 2d 829, 834 (Fla. Dist. Ct. App. 1982). Titze argues that Simon withheld permission because of "its disdain for Titze" and to attract Lamar's business, but the record supports the finding that Simon was concerned that the installment of a billboard on Titze's property might "conflict with, detract from or impair" the mall and its tenants, which Simon had a right to protect under paragraph 7 of the operating agreement. Simon also made its decision based on general information about billboards after Titze failed to submit plans for the billboard. We cannot say the business decision of Simon was unreasonable or arbitrary.

Titze argues that in the letter written on August 20, 2004, Lamar sought on Titze's behalf permission from Simon to install the billboard, but Titze failed to include that allegation in its complaint and could not "amend [its] complaint through argument in a brief opposing summary judgment." Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1314–15 (11th Cir. 2004). In any event,

9

Lamar did not seek approval from Simon but instead invited Simon to participate in decisions about landscaping on an adjacent lot. The district court did not err by granting summary judgment in favor of Simon.

### B. Titze Failed to Establish that Lamar Breached Its Agreement

Titze contends that Lamar breached its contract by negotiating with Simon and obtaining permits to install billboards on its property, but this argument fails for two reasons. First, Titze and Lamar terminated their contract by mutual agreement. See Dadic v. Schneider, 722 So. 2d 921, 923 (Fla. Dist. Ct. App. 1998) (attorney did not breach contract that was terminated by mutual consent). Second, Lamar had cause to terminate the contract before it obtained permits to install billboards on Simon property. After Simon withheld its consent to the billboard, Titze directed Lamar to cease its construction. Based on the likelihood Lamar never would install or, alternatively, would be forced to remove the billboard, that project became "economically or otherwise undesirable" for Lamar. Lamar was entitled to summary judgment against Titze.

### C. Titze's Complaints About Breaches of the Implied Covenant of Good Faith and Fair Dealing Fail as a Matter of Law

Under Florida law, there is no cause of action for breach of the implied covenant of good faith and fair dealing without evidence that the defendant

breached an express term of a contract.  Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1152 (11th Cir. 2005).  Because Titze's complaints that Simon and Lamar breached their contracts lack merit, and a breach of the implied covenant of good faith and fair dealing is not an independent cause of action, id., Titze's claims fail as a matter of law.  The district court correctly entered summary judgment in favor of Simon and Lamar.

*D. Titze Failed to Establish that Simon and Lamar Engaged in a Conspiracy*

Titze's claim of a civil conspiracy also fails.  To support a claim of civil conspiracy under Florida law, Titze had to prove that Simon and Lamar acted in concert to achieve a result that, even if lawful, was obtained by unlawful means.  Kee v. Nat'l Reserve Life Ins. Co., 918 F.2d 1538, 1541 (11th Cir. 1990).  "The basis for the conspiracy must be 'an independent wrong or tort which would constitute a cause of action if the wrong were done by one person.'"  Id. (quoting Am. Diversified Ins. Servs. v. Union Fid. Life Ins. Co., 439 So. 2d 904, 906 (Fla. Dist. Ct. App. 1983)).

Titze failed to prove a tortious conspiracy.  Titze failed to produce any evidence that Simon and Lamar conspired to thwart Titze's contract with Lamar; Simon and Lamar exercised rights they possessed by virtue of their contracts with Titze.  Although Titze argues that Simon and Lamar worked collectively to

11

preclude Titze from contracting with a third party, the record does not establish that Titze had another formal relationship with which Simon and Lamar could have interfered. Titze introduced evidence that it had received a bid from Salter Advertising, a competitor of Lamar, but Titze executed a contract with Lamar and was bound by that agreement. The district court correctly entered summary judgment against Titze's complaint of conspiracy.

*E. Simon Did Not Interfere Tortiously in Titze's Relationship with Lamar*

To prevail on its complaint of tortious interference, Titze had to prove that it had a contract or business relationship with Lamar about which Simon knew and interfered with intentionally or without justification and damaged Titze. <u>Am. Diversified Ins.</u>, 439 So. 2d at 907. Any interference in the relationship between Titze and Lamar by Simon was justified. The restrictive covenants gave Simon authority to approve or disapprove any construction on or use of Titze's property that would affect the mall and its tenants. The district court did not err by granting summary judgment in favor of Simon.

*F. Titze Failed to Establish It had a Fiduciary Relationship with Lamar*

Titze argues that the district court erred by granting summary judgment to Lamar on Titze's complaint about the breach of a fiduciary duty, but we disagree. Titze contends that Lamar "assumed certain extra-contractual duties" by agreeing

to obtain permits to install and maintain a billboard, but that duty is a term of its contract with Lamar. "Under Florida law, a cause of action for breach of fiduciary duty will not lie where the claim of breach is dependent upon the existence of a contractual relationship between the parties. . . . This is true because the duty is owed only as a result of the existence of the contract." Detwiler v. Bank of Cent. Fla., 736 So. 2d 757, 759 (Fla. Dist. Ct. App. 1999) (citation omitted). Lamar was entitled to summary judgment on this claim.

## IV. CONCLUSION

The summary judgment in favor of Simon and Lamar is **AFFIRMED**.