ROTHENBERG, J.
Muñoz HNOS, S.A. (“Muñoz”) appeals the trial court’s order entering final summary judgment in favor of Editorial Telev-isa International, S.A. (“Televisa”), and ET Publishing International. We reverse and remand.
BACKGROUND
Muñoz entered into a settlement agreement (“Agreement”) with Televisa in October of 2003. Pursuant to the Agreement, Muñoz was to receive $450,000 in cash, $460,000 in magazine advertising credit, and $200,000.00 in television advertising credit.
Two years after entering into the Agreement, Muñoz filed suit against Televisa, asserting claims for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), negligent misrepresentation (Count III), and fraud (Count IV). Muñoz claimed that Televisa breached the Agreement and the implied covenant of good faith and fair dealing when it failed to provide Muñoz with the requested letters confirming Mu-ñoz’s authority to sell advertising space in Televisa’s magazines and by ignoring Mu-ñoz’s request to approve its assignment of the advertising credit to Norlop-Thomp-son & Associates (“Norlop”). Muñoz also alleged that Televisa materially misrepresented to Muñoz that the advertising credit could be assigned “to any third party,” in order to entice Muñoz to dismiss its legal action against Televisa in Ecuador in exchange for the advertising credit.
Covenant l.B. of the Agreement, which applies to the magazine credit, states that the magazine credit may be redeemed to purchase advertising space in any magazine published by Televisa or its subsidiaries and in any country where Televisa’s magazines are distributed. That provision also provides that Muñoz may assign the *102 credit to any third-party, “subject to approval by the General Director of EDITORIAL TELEVISAR which] shall not be unreasonably withheld.” (emphasis added). Covenant l.C. of the Agreement, relating to the television advertising credit, however, strictly limits the use of the television advertising credit to “entities controlled by Juan Carlos Muñoz or ... by a blood relative of Juan Carlos Muñoz,” and prohibits use by any entity that has advertised on Televisa’s channels twelve months preceding execution of the Agreement.
Sometime in mid-2004, Muñoz contacted Televisa’s General Director, Eduardo Mi-chelsen (“Mr.Michelsen”), to request information about the rates, closing dates, etc. for advertising in Televisa’s publications. Mr. Michelsen asked Neal Tritton (“Mr.Tritton”), Mr. Michelsen’s executive assistant, and Rodrigo Sepulveda, general manager of Televisa’s South American division, to collect the information and send it to Muñoz. In 2004, Muñoz submitted three partial ads to Televisa for publication. All three ads were accepted and placed in the requested publications by Televisa.
Muñoz’s president, Juan Carlos Muñoz (“Mr.Muñoz”), testified that when Muñoz tried to sell the magazine advertising credit in Ecuador, Televisa’s Ecuadorian subsidiary claimed that Muñoz did not have authority to sell advertising in Televisa’s publications in Ecuador. As a result, Mr. Muñoz contacted Mr. Michelsen and requested a letter from Televisa confirming Muñoz’s authority to sell ads in Ecuador. Neither Mr. Michelsen, nor anyone else at Televisa, responded to Mr. Muñoz’s request for evidence of Muñoz’s authority to sell the credit in Ecuador. Mr. Muñoz also testified that when he attempted to sell the advertising credit to Norlop, Nor-lop also requested verification of Muñoz’s authority to sell advertising in Televisa’s publications in Mexico. Mr. Muñoz contacted Mr. Michelsen and requested a letter from Televisa’s Mexico office confirming Muñoz’s authority to sell the credit. As with the request regarding Muñoz’s authority to sell advertising in Ecuador, no one at Televisa responded to Mr. Muñoz’s request for evidence of Muñoz’s authority to sell the credit in Mexico.
Mr. Michelsen and Mr. Muñoz met in Mexico in February of 2005, to discuss possible solutions to Muñoz’s difficulty in redeeming its advertising credit. Mr. Mu-ñoz testified that it became clear at that meeting that Televisa was now adding an additional restriction to Muñoz’s redemption of the magazine advertising credit, one not included in the Agreement, by suggesting that Mr. Muñoz meet with Te-levisa’s advertising representative in Ecuador in order to obtain a list of acceptable clients that Muñoz could approach.
Mr. Tritton also provided deposition testimony. Mr. Tritton testified that, pursuant to Mr. Michelsen’s instructions, Mr. Tritton had provided Mr. Muñoz with the rate and other information requested in 2004, 2005, 2006, and 2007. Mr. Tritton explained that although this information was readily available to Muñoz online, Mr. Tritton had spent approximately ten to fifteen hours in 2004, compiling and sending the requested information to Muñoz.
Mr. Tritton also testified that Televisa had declined to send the letters confirming Muñoz’s authority to sell advertising in Televisa’s magazines in Ecuador and Mexico because Mr. Muñoz was only authorized to sell to “a limited list of clients, clients which had not been currently placing ads” with Televisa. As to Muñoz’s request to sell the magazine advertising credit to Norlop, Mr. Tritton further explained that because Norlop already purchased a significant amount of advertising in Televisa’s publications for some of its clients, Mu- *103 ñoz’s proposed sale of its credit to Norlop at a thirty percent discounted rate would have cost Televisa approximately forty percent of its revenue in Ecuador and significantly impacted the company — possibly causing Televisa to close its Ecuador office.
Muñoz moved for partial summary judgment on its breach of contract and breach of implied covenant of good faith and fair dealing claims. Televisa opposed Muñoz’s motion and filed its own cross motion for summary judgment. The trial court denied Muñoz’s motion for partial summary judgment on its breach of contract and breach of implied covenant of good faith and fair dealing claims; found that no issue of material fact existed on those claims; and entered final summary judgment in favor of Televisa on those claims. Additionally, the trial court held that Mu-ñoz’s tort claims for negligent misrepresentation and fraud were barred by the economic loss rule. This appeal ensued.
DISCUSSION
While a trial court’s ruling on a motion for summary judgment is subject to de novo review, a review of an order granting summary judgment requires a two-pronged analysis. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 180 (Fla.2000). Summary judgment is only proper if: (1) after viewing the facts and all inferences in favor of the party against whom summary judgment is viewed, no genuine issue of material fact exists; and (2) the moving party is entitled to judgment as a matter of law. Id. “If the record reflects the existence of any genuine issue of material fact or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist, summary judgment is improper.” Holland v. Verheul, 583 So.2d 788, 789 (Fla. 2d DCA 1991).
The trial court’s construction of a contract is an issue of law similarly subject to de novo review. Fla. Power Corp. v. City of Casselberry, 793 So.2d 1174, 1178 (Fla. 5th DCA 2001). Because a settlement agreement is contractual in nature, it is interpreted and governed by contract law. Cadle Co. v. Schecter, 602 So.2d 984, 985 (Fla. 3d DCA 1992). Accordingly, because this appeal challenges entry of summary judgment in favor of Televisa and revolves around the interpretation of the Agreement between Televisa and Muñoz, our standard of review is de novo.
We first dispose of the trial court’s ruling that Muñoz’s negligent misrepresentation and fraud claims are barred by the economic loss rule. This issue has recently been resolved by the Florida Supreme Court in Tiara Cond. Ass’n v. Marsh & McLennan Cos., 110 So.3d 399 (Fla.2013), where, in response to a certified question from the United States Court of Appeals for the Eleventh Circuit, the Florida Supreme Court held that application of the economic loss rule is strictly limited to product liability cases. Id. at 400. Without benefit of the recent decision in Tiara, the trial court erred and applied the economic loss rule to bar Muñoz’s tortious claims against Televisa. We therefore reverse the trial court’s order granting summary judgment in favor of Televisa on Counts III and IV and remand for further proceedings.
Similarly, we reverse the trial court’s order granting summary judgment in favor of Televisa on Counts I and II. We conclude that this record does not support summary judgment on the breach of contract claims. Upon our de novo review of the record, this Court concludes that genuine issues of material fact remain regarding whether Televisa breached the Agreement or the covenant of good faith and fair *104 dealing by unreasonably withholding its consent to Muñoz’s assignment of the advertising credit. We therefore hold that Televisa was not entitled to judgment as a matter of law. Accordingly, we reverse the trial court’s order granting summary judgment in favor of Televisa on Counts I and II and remand for further proceedings on those counts as well.
Specifically at issue here is whether Te-levisa “unreasonably withheld” approval of Muñoz’s assignment, use, or redemption of the magazine advertising credit. While the Agreement provides that Muñoz may use or assign the credit “to any third party,” the assignment is subject to approval, which “shall not be unreasonably withheld.” Since there is no evidence that any request for assignment was submitted and actually rejected by Televisa, Muñoz’s claim appears to be premised on an anticipatory breach by Televisa’s failure to provide the requested letters evidencing Mu-ñoz’s authority to sell its credit in Ecuador and Mexico. According to Mr. Muñoz, without the requested letters, he could not sell the credit in Ecuador or in Mexico.
Although the construction of a contract is a matter of law, where, as here, the issue is whether consent to an assignment was unreasonably withheld, summary disposition of a breach of contract claim is rarely suitable. See, e.g., Fernandez v. Vazquez, 397 So.2d 1171, 1174 (Fla. 3d DCA 1981) (reversing summary judgment by underscoring the factual nature of such a determination); Popovic v. Fla. Meek Contractors, Inc., 358 So.2d 880, 882-84 (Fla. 2d DCA 1978) (reversing because evidence presented at trial did not establish that landlord’s refusal to consent to assignment by tenant was unreasonable); Catalina, Inc. v. Biscayne Ne. Corp. of Fla., 296 So.2d 580, 581 (Fla. 3d DCA 1974) (affirming the trial court’s finding after trial that the consent to sublease was unreasonably withheld). The reasonableness or unreasonableness of a party’s consent to an assignment is a factually driven determination and one best suited to resolution by the trier of facts. Fernandez, 397 So.2d at 1174.
Under certain circumstances, for example, withholding consent to an assignment in order to charge a higher price has been held unreasonable. Fernandez, 397 So.2d at 1174 (noting that a landlord’s denial of consent to the assignment of a commercial lease in order to charge a higher rent has been held to be arbitrary and unreasonable); see also First Nationwide Bank v. Fla. Software Servs., Inc., 770 F.Supp. 1537, 1543 (M.D.Fla.1991) (applying the rule established in Fernandez to a software licensing agreement and emphasizing that reasonableness is determined by reference to the provisions negotiated in the original agreement and not to what is later found to be most economically advantageous). On the other hand, withholding of consent to an assignment may be reasonable if consenting to the assignment would destroy or adversely affect an existing contract. See Catalina, Inc., 296 So.2d 582-83 (opining that landlord’s refusal to consent to sublease of property to an existing tenant could be reasonable if the proposed sublease would have destroyed or affected an existing lease with the tenant).
We conclude that the testimony by Mr. Tritton and Mr. Muñoz created sufficient factual issues regarding the reasonableness of Televisa’s withholding of consent to Muñoz’s assignment of the advertising credit to preclude summary judgment. The finder of fact could determine that Mr. Tritton’s testimony that Muñoz’s sale of its credit to Norlop would be economically disadvantageous to Televisa constituted an unreasonable withholding. On the other hand, when the facts are better developed, *105 the trier of fact could find that Televisa’s withholding of consent was reasonable as it would destroy Televisa’s Ecuador office or “adversely affect” its ability to continue to conduct business with its existing client, Norlop. In any case, we conclude that factual issues remain and thus Televisa was not entitled to judgment as a matter of law. Accordingly, we reverse and remand for further proceedings.
Reversed and remanded.