Ramsey AGAN, Grace Agan, and Sherry Ann Spies, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

KATZMAN & KORR, P.A., Leigh C. Katzman, and Ferren L. Korr, Defendants.

No. 03–62145–CIV.

United States District Court, S.D. Florida.

July 16, 2004.

F. Blane Carneal, Fort Lauderdale, FL, O. Randolph Bragg, Chicago, IL, for Plaintiffs.

James M. Kaplan of Miami, FL, for Defendants.

### ORDER DENYING MOTION TO STRIKE

TORRES, United States Magistrate Judge.

■ This matter is before the Court on Defendants' Motion to Strike Exhibits C and D from the Complaint [D.E. 12] made in conjunction with their Motion to Dismiss the Class Action Complaint and pursuant to an Order of Reference entered by the Honorable William P. Dimitrouleas, United States District Judge [D.E. 26]. The Order of Reference specifically indicated that certain issues presented in Defendants' Motion to Strike may be factual in nature. *Id.* As such, and after hearing initial argument of counsel [D.E. 27 and 50], the undersigned conducted an evidentiary hearing on the above motion. [D.E. 71]. Moreover, at the evidentiary hearing, the parties fielded questions and, in light of their responses, were given the opportunity to file supplemental memoranda but have declined to do so. The Court has carefully considered the Motion, the Plaintiffs' Responses in Opposition [D.E. 14 and 57], the Defendants' Declaration and Reply [D.E. 55 and 58], and the file in this cause together with the argument of counsel.[1]

### I. BACKGROUND and FACTUAL FINDINGS

The instant matter arises out of the production of pre-billing worksheets created in connection with attempts to collect Plaintiffs Ramsey and Grace Agan's (hereinafter "the Agans") alleged past due condominium assessments by Plaza East Association, Inc. Specifically, these worksheets came into the Agans' possession in relation to the currently litigated state court case of *Plaza East Association, Inc. v. Rasmey Agan, et al.* (Fla. 15th Jud. Cir.), a condominium association lien foreclosure action filed in February 2003 by Plaza East and counterclaims filed by the

---

1. It is well settled that motions to amend or strike pleadings are non-dispositive motions that may be referred and ruled upon by a magistrate judge by order. *Wingerter v. Chester Quarry Co.,* 185 F.3d 657 (7th Cir.1998); *Miller v. Loughren,* 258 F.Supp.2d 61 (N.D.N.Y.2003); *Indiana Gas Co., Inc. v. Aetna Cas. & Sur. Co.,* 1995 WL 866417 (N.D.Ind.1995); *Schrag v. Dinges,* 144 F.R.D. 121 (D.Kan.1992).

Agans for declaratory relief, breach of contract and breach of fiduciary duty.

With respect to the state court action, the Agans are represented by attorney, F. Blane Carneal, Esq. After being retained by the Agans, Mr. Carneal contacted the law firm representing Plaza East Association, Inc., Katzman & Korr, P.A., about the debt in question. Correspondence then ensued, in pertinent part from April 15, 2003 until May 16, 2003, between Mr. Carneal and Plaza East Association, Inc.'s attorney Mark M. Heinish, Esq. of Katzman & Korr, P.A.

On April 15, 25, and 27, 2003, Mr. Carneal wrote letters to Mr. Heinish requesting a number of items, including specifically requesting verification of the Agans' purported debt. In response, Mr. Heinish, on April 25, 29, and 30, 2003, provided Mr. Carneal with an accounting ledger and related information as well as explanations thereto. Then, on May 6 and 7, 2003, Mr. Carneal sent and/or faxed correspondence to Mr. Heinish requesting an estoppel letter, a device in which the party foreclosing the real property advises what amount, if timely paid by the defendant, would estop the plaintiff from foreclosing the real property. On May 8, 2003, Mr. Heinish provided Mr. Carneal with an estoppel letter, providing a pay off figure that would remain valid until May 19, 2003.

On the next day, May 9, 2003, Mr. Carneal requested from Mr. Heinish a copy of Katzman & Korr, P.A's costs documentation, attorneys' fees statement, and the contract of engagement. Shortly thereafter that same day, Mr. Heinish responded as to the status of his billing relationship with client Plaza East Association, Inc., refused to provide a copy of his engagement letter with the client, but agreed to enclose with the letter the firm's attorneys'

fees and costs records concerning collection efforts as to the Agans' alleged debt— what would ultimately become Exhibits C and D of the federal complaint. However, these documents in question, each labeled as a "Pre-bill Worksheet," were not received by Mr. Carneal until May 12, 2003. Mr. Heinish reenforced the fact that the estoppel period would expire on May 19, 2003.

On May 13, 2003, Mr. Carneal mailed Mr. Heinish a letter addressing what he found to be discrepancies in the amounts stated in the latest estoppel letter as well as seeking supporting documentation on the submitted fees and costs. After receiving a letter from Katzman & Korr, P.A. setting forth an explanation as requested, Mr. Carneal advised Mr. Heinish that he [Mr. Carneal] was authorized to accept service of process on behalf of the Agans for the foreclosure action that was already filed in state court.

As the state litigation process continued, the Agans, along with Sherry Ann Spies ("Spies"), filed a Class Action Complaint in federal court to recover damages pursuant to the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.,* and the Florida Consumer Collection Practices Act (FCCPA), Fla. Stat. § 559.55 *et seq.* [D.E. 1]. In this action Plaintiffs sued Katzman & Korr, P.A. as well as their named partners, Leigh Katzman and Ferrn L. Korr ("Defendants"), alleging that, in Defendants' attempts to collect condominium assessments on their clients' behalf, Defendants overcharged consumers for fees and costs and otherwise violated the FDCPA and FCCPA. Moreover, attached to Plaintiffs' complaint as Exhibits C and D are the "Pre-bill Worksheets" originally received by Mr. Carneal on May 12, 2003. [D.E. 1 at ¶¶ 17, 19]. In re-

sponse to the complaint, Defendants filed, *inter alia*, a Motion to Strike these exhibits. This motion is presently before the Court.[2]

## II. ANALYSIS

 Defendants move to strike exhibits attached to Plaintiffs' complaint. Rule 12(f) of the Federal Rules of Civil procedure provides that "the court may order stricken from an pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike is a drastic remedy that is disfavored by the courts. *See Thompson v. Kindred Nursing Centers East, LLC,* 211 F.Supp.2d 1345, 1348 (M.D.Fla.2002). Motions to strike are usually denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Id.; see also In re Southeast Banking Corp. Sec. & Loan Loss Reserves Litig.,* 147 F.Supp.2d 1348, 1355 (S.D.Fla.2001).

Defendants seek to strike from the complaint Exhibits C and D, which are comprised of pre-billing worksheets delineating attorneys' fees and costs incurred by Defendants in connection with attempts to collect the Agans' purported delinquent condominium assessments. Essentially, Defendants contend that these pre-billing worksheets are confidential and inadmissible, pursuant to Fed.R.Evid. 408 and Fla.

Stat. § 90.408, because they were obtained during settlement negotiations.[3] Here, Plaintiffs contend that this matter was not in a settlement posture that would give rise to any negotiations that would fall under these rules of evidence. Plaintiffs claim they were merely seeking this information to validate and document the debt, including the amount for attorneys' fees and costs, as authorized by Fla. Stat. § 718.01 and 15 U.S.C. § 1692. As such, it is contended that the disclosure of the pre-billing worksheet could not have been a product of a confidential settlement communication.

### A. Whether Exhibits C and D are Settlement Documents

 Under this backdrop, the Court must first determine if Exhibits C and D to the complaint, Defendants' pre-billing worksheets, are part of an "offer of compromise" in order to trigger the protections of both the federal and Florida rules. Plaintiffs argue the these documents were provided pursuant to a statutory request for verification. However, it is clear that Plaintiffs received these pre-billing worksheets after the debt had been verified and in response to settlement negotiations initiated by the Agans. Moreover, these pre-billing worksheets served to substantiate the terms presented to resolve the foreclosure action. A review, therefore, of the

---

**2.** This Motion to Strike was presented as one of a number of arguments contained within Defendants' Motion to Dismiss Class Action Complaint. [D.E. 12]. With exception of the pending matter, which was referred to the undersigned, the District Court denied the relief requested. [D.E. 26].

**3.** Defendants also contend that these exhibits should be stricken based on attorney-client privilege. However, at the evidentiary hearing, Defendants conceded that this argument

was ineffective since these internal billing worksheets were never provided to the client. *See also* Defendants' Reply [D.E. 58] at 5. Moreover, Defendants intimated that these documents could also be privileged as work product. However, rather than relying on this doctrine, Defendants merely made a passing reference to it, choosing instead to focus their arguments on the confidential nature of their settlement discussions.

evidence and testimony presented shows that they must be treated as settlement documents, at least to trigger the next step in the inquiry under Fed. Rule 408 and Fla. Stat. § 90.408.

Specifically, on April 25, 29, and 30, 2003, Mr. Heinish sent Mr. Carneal an explanation as well as copies of a historical itemized ledger validating the debt owed by the Agans to Plaza East Association, Inc. It was only after the historical ledger and information were received that the Agans requested, on May 6, 2003, a formal "estoppel letter" as that term is understood in collection practice

Moreover, it is evident that the request for the estoppel was not a continued attempt for verification of the debt. As defined and presented at the evidentiary hearing, an estoppel letter is a resolution instrument, whereby if certain conditions are met, the disputed debt is resolved and all steps toward foreclosure cease. Here, Mr. Carneal's correspondence prior to the request for an estoppel letter clearly states that verification of the debt is being sought. However, any such qualification and characterization ended on May 6, 2003 and thereafter.

Rather, the language employed in the subsequent correspondence between Mr. Carneal and Mr. Heinish illustrates a settlement mindset. For instance, the May 6, 2003 letter in which Mr. Carneal, on behalf of his clients, requests an estoppel letter provides as follows:

> Please forward an estoppel letter in which you set forth the elements of settlement of all pending Agan/Plaza East litigation issues.

> With the payment of same, we will dismiss *Agan v. Plaza East* with prejudice and you would dismiss the *Plaza*

*East v. Agan* case and record a satisfaction of the claim of lien.

*Plaintiffs' Opposition to Defendants' Motion to Strike Complaint's Exhibits C and D* [D.E.47] at Exh. 8. Then on May 7, 2003, Mr. Carneal sent a letter to Mr. Heinish stating "[i]f this matter can be settled upon receipt of an estoppel letter for all pending matters, then there is no need to incur additional fees." *Id.* at Exh. 10. Moreover, on May 9, 2003, Mr. Carneal wrote to Mr. Heinish inquiring "what it takes to resolve both cases with respect to attorney's fees and costs." *Id.* at Exh. 11.

Then, in the formal estoppel letter itself sent to Mr. Carneal, Mr. Heinish states, with the respect to the outstanding balance, "[t]he following is the payoff information requested by you..... The sums demanded in this letter shall only be valid as a binding estoppel and constitute full payment of the delinquent account if payment in full is received by this firm during the time period detailed therein." *Id.* at Exh. 12. The estoppel letter then itemized the amounts owed that would constitute "full payment," including attorneys' fees and costs. *Id.*

Having received these figures, Mr. Carneal then requested that Mr. Heinish forward a copy of the firm's cost documentation, attorney's fees statement of hours and contract of engagement. *Id.* at Exh. 13. In sending Mr. Carneal some of this requested information, including what has now been labeled Exhibit C and D to the present complaint, Mr. Heinish specifically reiterated that it was the Agans "who offered to settle this matter by requesting an estoppel from us." *Id.* at Exh. 14.

As is readily apparent, these post-verification communications are saturated with

resolution terms that can only be categorized as offers to compromise or resolve the pending debt. Moreover, the tone and specificity of the requests and correspondence unmistakably changed beginning on May 6, 2003, the day of the estoppel letter request. Even though the documents produced after the May 8, 2003, estoppel letter were not specifically labeled "for settlement purposes," the intent of the drafter—Mr. Heinish—is clear. The discussions at issue were unmistakably compromise negotiations. Further, it is evident that the estoppel request, undisputedly initiated by Mr. Carneal on behalf of the Agans, acted as the impetus for the offer of compromise.

Moreover, it is evident that during this "estoppel period" Mr. Carneal sought documentation to explain the figures provided in the May 8th estoppel letter. Here, these requested pre-billing worksheets served to support the collection firm's offer to resolve the foreclosure matter. As a result of Mr. Carneal's documentation request, these billing statements were essentially a supplement to the estoppel letter and part and parcel of the Defendants' attempt to resolve the dispute. As such, Defendants' pre-billing worksheets were provided in furtherance of settlement of the underlying state court action. Accordingly, Exhibits C and D must be found, as a matter of fact, to be settlement documents that on their surface *may* be protected from disclosure or admissibility under Rule 408.

### B. Application of Fed.R.Evid. 408 and Fla. Stat. § 90.408

■ As argued by Defendants, it is well established that public policy favors the settlement of disputes and avoidance of court litigation whenever possible. In fact, in both the state and federal systems,

rules have been codified in order to protect and promote this policy. *See* Fed.R.Evid. 408; Fla. Stat. § 90.408; *see, e.g., Central Soya Co. v. Epstein Fisheries, Inc.,* 676 F.2d 939, 944 (7th Cir.1982)(recognizing a fear that settlement negotiations will be inhibited if parties know that their statements may be used as admissions of liability); *Benoit, Inc. v. Dist. Bd. of Trustees of St. Johns River Cmty. College of Fla.,* 463 So.2d 1260, 1261 (Fla. 5th DCA 1984) (noting that protecting the offeror furthers the state's public policy favoring settlement).

■ However, "courts should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir.1976). Thus, when confronted with a motion to strike based on inadmissibility, "a court should consider whether there is any possibility that the pleading could form the basis for admissible evidence." *Eskofot A/S v. E.I. Du Pont De Nemours & Co.,* 872 F.Supp. 81, 94 (S.D.N.Y.1995). As such, even though Exhibits C and D are settlement documents, exclusion—especially at this early stage of the litigation—is not necessarily mandated. Although Defendants maintain that Fed.R.Evid. 408 and Fla. Stat. § 90.408 provide to the contrary, it is apparent that in light of the burden required to strike any pleadings and the correct interpretation of these rules of evidence, these particular documents fall outside the protections usually afforded to the products of settlement negotiations.

### 1. Exhibits C and D Are Otherwise Discoverable

Defendants contend that these exhibits should be stricken under Rule 408 of the Federal Rules of Evidence and the corol-

lary statute in the Florida Evidence Code.[4] Federal Rule 408 governs the admissibility of evidence of compromise negotiations and provides, in pertinent part, as follows:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. *This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.*

■ Here, Defendants maintain that these pre-bill worksheets were produced solely for the purpose of a compromise settlement, and thus, are inadmissible under this federal rule. However, "Rule 408 is not an absolute ban on all evidence regarding settlement negotiations." *See, e.g., Bankcard Am., Inc. v. Universal Bancard Sys., Inc.,* 203 F.3d 477, 484 (7th Cir.), *cert. denied,* 531 U.S. 877, 121 S.Ct. 186, 148 L.Ed.2d 128 (2000); *see also Liautaud v. GenerationXcellent, Inc.,* No. 00–C–6365, 2002 WL 230799, *2 (N.D.Ill.

Feb. 15, 2002) (Fed.R.Evid. 408 does not permit a party to shield relevant evidence from admissibility merely because it was discussed in a settlement negotiation). Rather, an exception is explicitly stated for evidence that is otherwise discoverable, even though it was presented during compromise discussions. *See* Fed.R.Evid. 408 Adv. Committee Notes ("A party should not be able to immunize from admissibility documents otherwise discoverable merely by offering them in a compromise negotiation."); *Bankcard,* 203 F.3d at 484 ("[Rule 408] permits evidence that is otherwise discoverable").

Defendants argue that these documents did not exist prior to the settlement negotiations and that these pre-bill worksheets, since they were never sent to the client, were not in final form. As such, Defendants contend that the exhibits do not fall with the rule's "otherwise discoverable" provision. However, Defendants' focus on the creation and packaging of the information is unavailing. It is undisputed that Defendants constructed the pre-bill worksheets from information in their records, which they still possess in digital form inside their computer system, and which were created contemporaneously with the time records included in the worksheets. Here, the billing information thus still would have existed regardless of the settlement negotiations. Defendants have in their possession the data compilations comprising these pre-billing statements, which could be compelled pursuant to a Rule 34 request. *See* Fed.R.Civ.P. 34. These exhibits are otherwise discoverable,

---

4. Defendants' primarily rely on the Florida statute because the settlement negotiations in question occurred while only the state court action was pending and in order to resolve the state law foreclosure dispute. This action, however, is based upon a federal question and in a case where the federal evidence rules govern. As the following discussion demonstrates, the resolution of the issue is the same regardless of which evidentiary rule is applied. The Court will thus assume that both provisions would potentially apply.

and therefore, not barred by Fed.R.Evid. 408; *see also Liautaud,* 2002 WL 230799 at *2 (finding, in part, that a letter attached to a complaint should not be stricken since the information contained therein could be proven independently); *cf. Ramada Develop. Co. v. Rauch,* 644 F.2d 1097 (5th Cir.1981) (expert report created and utilized for settlement discussions was inadmissible under Rule 408 and not otherwise discoverable; "Clearly such an exception does not cover the present case where the document, or statement, would not have existed but for the negotiations, hence the negotiations are not being used as a device to thwart discovery by making existing documents unreachable.").

In essence, assuming that the Plaintiffs had never attached Exhibits C and D to the complaint, they could have still sought to support the complaint's allegations— that attorney fee demands were made to the Plaintiffs that were grossly in excess of what was actually incurred—through discovery served on Plaza East and their lawyers. And assuming no adequately raised and preserved claims of attorney-client privilege or work product prevented their disclosure, the Court may have compelled their production in this case. The information contained in the worksheets were in existence well before the settlement discussions transpired in May 2003. The fact that the hardcopy form of the computerized information—the worksheets—did not come into existence until the settlement discussions ensued does not make a material difference. The hardcopy worksheet was simply a paper reproduction of data that came into existence well before those discussions occurred.

Defendants never presented the Court with any convincing countervailing argument to rebut this point. The best Defen-

dants could do is to argue that, at least under the Florida statute, the "otherwise discoverable" language in the federal rule is not present in the state statute; therefore, the documents in question are confidential and inadmissible under the Florida statute. There is no support presented, however, for the proposition that the Florida statute has been interpreted any differently than the Federal rule. But even if the Florida statute does not include, for the sake of argument, the "otherwise discoverable" exclusion, the Florida statute would still not provide any basis to grant Defendants the relief they request as explained below.

**2. Exhibits C and D as Intended for a Purpose Other Than Liability**

Rule 408 specifically permits the admission of settlement negotiation evidence when it is presented for a reason other than demonstrating liability, including but not limited to proving bias, prejudice of a witness, and undue delay. Fed.R.Evid. 408; *see, e.g., Bankcard,* 203 F.3d at 484 ("The rule [408] permits evidence... that is offered for a purpose other than establishing liability."); *U.S. v. Hauert,* 40 F.3d 197, 199–200 (7th Cir.1994) (to show defendant's knowledge and intent); *Freidus v. First Nat'l Bank,* 928 F.2d 793, 795 (8th Cir.1991) (for rebuttal); *Bradbury v. Phillips Petroleum Co.,* 815 F.2d 1356, 1362–66 (10th Cir.1987) (to show a course of reckless conduct); *County of Hennepin v. AFG Indus., Inc.,* 726 F.2d 149, 153 (8th Cir.1984) (for impeachment).

■ Likewise, Florida law, on which Defendants principally rely in support of their motion, recognizes this exception under Fla. Stat. § 90.408. Specifically, the Florida statute provides that:

Evidence of an offer to compromise a claim which was disputed as to validity

or amount, as well as any relevant conduct or statements made in negotiations concerning a comprise, is inadmissible to prove liability or absence of liability for the claim or its value.

In other words, "[s]ection 90.408 excludes evidence of settlement negotiations only when the evidence is offered to prove liability, the absence of liability, or value. *Thus, evidence of settlement negotiations is admissible to establish other relevant facts.*" *Wolowitz v. Thoroughbred Motors, Inc.*, 765 So.2d 920, 925 (Fla. 2d DCA 2000) (emphasis added). Therefore, although the language is more generalized under the Florida statute than its federal counterpart, the scope of the privilege—at least in this regard—is fundamentally the same.

Here, Defendants contend that as settlement offers, Exhibits C and D are inadmissible since they are being utilized to prove Defendants' liability in the federal action. Defendants assert that these exhibits should be excluded based on the reasoning of *Charles B. Pitts Real Estate, Inc. v. Hater*, 602 So.2d 961 (Fla. 2d DCA 1992), where it was determined that a settlement in a prior suit between the owners and holders of a purchase option was properly excluded in a subsequent suit brought by a third party against the owner, the owners' brokers, seeking payment of their brokerage fees. The Second District Court of Appeals reasoned that, although the settlement in the prior case was not an offer of settlement in the present case, it was a settlement of a closely related issue and should be excluded under Fla. Stat. § 90.408. *Id.* at 963. Defendants argue that, just as in *Pitts*, these pre-billing worksheets, created for settlement, should be stricken since they are closely related to the validity and amounts of claim in the underlying state action and are being used to prove liability in the instant action.

This Court must disagree with Defendants' assertion that the circumstances of *Pitts* mirror those of this case. In *Pitts*, the introduction of the settlement agreement delineating how much the owners paid the holders would have dictated the jury's finding as to how much the owners would have to pay to the brokers. Undoubtedly, the purpose for introducing the settlement from the prior suit would be to prove liability of the claim in the second action. In fact, in *Pitts* the settlement agreement in the prior suit was so intimately related to the claim between the owners and the brokers that the court stated that "it [was] quite analogous to a settlement with a codefendant." *Id.*

Such is not the case here. Defendants' pre-billing worksheets were an attempt to settle a foreclosure action whereas the instant complaint pertains to violations of the FDCPA and FCCPA. These two actions are independent of each other. In describing Plaintiffs' class action complaint with respect to the inappropriateness of abstention, the District Court held that "[t]he FDCPA claim in this case and the state claim on the underlying debt raise different legal and factual issues, governed by different bodies of law." *Order Denying Defendants' Motion to Dismiss* [D.E. 26] ¶ 7.

■ Here, the exhibits in question refer to a different and collateral matter and are not being introduced for liability/value purposes involving the underlying foreclosure claim, but, rather, as a basis for alleged FDCPA and FCCPA violations. It is well settled that even though settlement offers are generally not admissible as evidence in the lawsuit in which the offers are

made, an offer of settlement in one case can be relevant in another case. *See Ritter v. Ritter,* 690 So.2d 1372, 1376 (Fla. 2d DCA 1997) (finding that evidence of an offer in a pending personal injury case was admissible in a dissolution of marriage case for the purpose of establishing the value of potential marital asset). Although the documents in question are the same, their purpose and relevance, as to these diverse actions, are certainly not. In this federal action, the trier of fact will not determine whether the original debt owed by the Agans was correct or whether the attorney's fees incurred by the creditor should have been paid. Instead, the trier of fact will determine whether the methods used to collect on that debt were unlawful under federal law. Thus, the "liability" or "value" of what was discussed during the settlement negotiations in May 2003 is not the same liability or value that will be decided in this case.

Defendants have thus not met the showing necessary to warrant the extraordinary relief requested. The Court recognizes the worthy and broad protections offered to settlement documents. However, as demonstrated in this matter, there are well-recognized exceptions to every rule. Because the provided information is otherwise discoverable and/or being offered for another permissible reason, Fed.R.Evid. 408 and Fla. Stat. § 90.408 do not prohibit the reliance on Exhibit C and D in the Plaintiffs' complaint or their attachment to this pleading.

One final point. Defendants' rely in great part on the argument that their business would be adversely affected by a contrary ruling on this pleading issue. If they cannot provide attorney fee documentation to a debtor without fear that the debtor will turn around and sue them for an imaginary contradiction between the fees being requested and the fees disclosed in the documentation, they argue, then a collection attorney acting in good faith cannot run that risk. That would, in turn, impair the system's interest in resolving such disputes without litigation because, they claim, most debtors insist on reviewing this type of information before paying any debt that includes attorney's fees.

There are three obvious answers to this claimed prejudice. First, to some extent it runs afoul of the purpose that Congress intended in enacting the Fair Debt Collection Practices Act; any collection agency or collection lawyer must comply with the requirements of federal law in collecting on a debt. If that means the agency or attorney must scrutinize her attorney time records more carefully, that is a price that federal law requires. Second, this claimed prejudice is self-created. The fact is that, although the Court deems the documents in question to be the *prima facie* products of settlement negotiations, Defendants were not very careful in producing the billing worksheets to the Plaintiffs' counsel. The documents were not marked confidential, were not marked as privileged in any way either under Rule 408 or for any other privilege, and further potentially waived any attorney-client or work product privilege that may have attached to a particular time entry. The billing records were, after all, disclosed unredacted to the adversary's counsel. Defendants could have better protected themselves through a confidentiality agreement with counsel, through redactions of individual time entries, or through other means that would have better safeguarded the confidential nature of the documents and better protected Defendants from the repercussions of their disclosure. And, third, even assuming Defendants are right in principle,

neither Federal Rule 408 or Fla. Stat. § 90.408 provides them with a blanket protection under these circumstances, and especially at the pleading stage of this case.

The Court's ruling in this regard does not mean, however, that Defendants have no remedy in the case for the unfairness they claim will befall upon them if these Exhibits are not stricken from the complaint. First, the fact that they are not properly subject to a motion to strike at the pleading stage does not mean that the district court cannot entertain these arguments as to their admissibility at trial on a motion in limine. Second, Defendants could raise similar points even beforehand on summary judgment. And, third, ultimately the trier of fact may have to determine whether the alleged discrepancies between the fees that were demanded and these time records constituted material violations of federal law. If, as Defendants maintain, the claims in this case stemming from these Exhibits are frivolous, then they should prevail at trial. It is entirely premature, however, to effectively make such a determination at this early stage of the case.

## III. CONCLUSION

Careful consideration of the relevant case law concerning the striking of pleadings and exclusion of settlement documents convinces this Court that Exhibits C and D to the complaint cannot be stricken as a matter of law. The Court does not find that these exhibits confuse the issues, unnecessarily prejudice a party or lack relationship to the controversy. Furthermore, Exhibits C and D are settlement documents, the Court is not persuaded that they must be stricken from the complaint under Fed.R.Evid. 408 and/or Fla. Stat. § 90.408.

Accordingly, based on the foregoing, Defendants' Motion to Strike Exhibits C and D from the Complaint [D.E. 12] is **DENIED**.