# Third District Court of Appeal

## State of Florida

Opinion filed September 24, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-1433
Lower Tribunal No. 13-3041
_____

**Sam Sugar, M.D., et al.,**
Appellants,

vs.

**In Re: Estate of Idelle Stern,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Bernard S. Shapiro, Judge.

Michael J. Schlesinger, for appellants.

Stok Folk & Kon, and Robert A. Stok (Aventura), for appellees.

Before SALTER, FERNANDEZ and LOGUE, JJ.

SALTER, J.

Sam and Judy Sugar, beneficiaries of the estate of Idelle Stern (Judy Sugar's mother), appeal an order denying their motion for relief under a 2011 settlement

agreement, and granting a petition brought by the competing beneficiaries (the appellees) for relief under that agreement.[1]  We affirm the trial court's determination that the Sugars released any entitlement to inherit funds from Idelle Stern's Israeli bank account.  However, we reverse the trial court's determination that the Sugars must disgorge funds transferred to them from the Israeli bank account several years before the July 2011 settlement.  Any such claims were subsumed in the settlement and in the broad releases approved by a prior judge assigned to the case.  In effect, the petition and cross-motion below were not motions to enforce the settlement agreement; the parties sought instead to obtain relief beyond that which they had agreed to accept in the settlement documents.

I.    Facts

In addition to Judy Sugar, Idelle Stern had three other daughters, the appellees Joyce Genauer, Rochelle Kevelson, and Tikvah Lyons.  The appellees petitioned to have their mother declared incompetent in April 2010.  At the first hearing on the petition, a guardian was appointed.

In January 2011, the guardian sued the Sugars, who had been managing Idelle's affairs, for allegedly misappropriating funds and abusing Idelle.  That litigation ended in a settlement agreement executed in February 2011.  As part of this settlement, Judy Sugar agreed, on her own behalf and on behalf of her heirs, to

---

[1] We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.170.

2

a $750,000 reduction in any distribution she would receive from Idelle's trust. Additionally, all pre-need documents and powers of attorney executed by Idelle, naming the Sugars in any capacity, were rescinded. Any document naming Judy as a beneficiary was set aside. The agreement also contained a reciprocal, general release. The appellees objected to the terms of the February 2011 settlement agreement, but those objections were denied and the trial court approved the settlement. The appellees appealed that approval order to this Court.[2]

Thereafter, in July 2011, the guardian sued the appellees, again alleging misappropriation of funds (but this time, by the appellees). On July 18, the guardian filed a motion for sanctions against the appellees asserting that as early as "May 2010, [the guardian] has sought information from the [appellees], among others, relating to assets of the Ward . . . ." The next paragraph asserts that in May 2011 the appellees filed a motion to compel the guardian to conduct an accounting of Idelle Stern's funds and accounts in Bank Leumi in Israel.

After a long settlement conference, also on July 18, the Sugars, the guardian, and the appellees entered into a global settlement agreement intended to resolve all the pending litigation. The agreement was a list of bullet points describing the parties' understanding. It included an introductory recitation that the settlement

---

[2] Genauer v. Comprehensive Pers. Care Servs., Inc., Case No. 3D11-752 (Fla. 3d DCA filed Mar. 23, 2011). The appellees voluntarily dismissed that appeal as part of the July 2011 "global" settlement described below.

3

was "based upon the representations of the parties as of the date of the settlement," but no specific representations of the parties to one another were listed. Nor did the settlement agreement address the inadmissibility[3] of any oral representations that might have been made during the settlement conference.

The July 2011 global settlement agreement required mutual releases and waivers. It provided: "All parties shall exchange reciprocal releases as to all matters, including but not limited to any matters relating to [the attorneys, the guardian], and any matters between them." The final provision of the agreement, labeled "Dismissal of Actions," provided that:

   a. All lawsuits are dismissed with prejudice.
   b. All pending matters are dismissed with prejudice.

As part of this settlement, Judy Sugar's inheritance from her Mother's trust was decreased by $580,000, rather than the $750,000 provided in the February 2011 settlement. The appellees also voluntarily dismissed the appeal they had initiated following the trial court's approval of the February 2011 settlement.

The parties could not agree on a formal, more detailed writing for the July 2011 settlement. The guardian and the appellees filed a petition requesting that the probate court adopt and enforce their proposed global settlement agreement. After a hearing, the trial court entered an order ratifying the bullet-points agreement drafted on July 18, and making it an order of the court. The court found that the

[3] § 90.408, Fla. Stat. (2011).

4

agreement "was entered into by all parties hereto knowingly and voluntarily with each party being represented by counsel of their choosing . . . ."

In November 2011, the guardian received a letter from Bank Leumi in Israel. The appellees assert that this was their first indication of the existence of this account. The appellees maintain that Sam Sugar denied any awareness of the existence of any Israeli account during the settlement negotiations and that they relied on this representation.

By November 2011, however, the releases associated with the settlement had still not been signed. The parties still disagreed over whether the releases should contain a particular carve-out provision. The appellees' counsel drafted a general release that excluded any cause of action for matters arising after the settlement date (the "carve-out" provision). The appellees argued that the "carve-out" was necessitated by the allegedly newly-discovered Israeli funds, and possible misappropriation, notwithstanding their May 2011 motion for the guardian to account for these funds. The appellees filed a petition to compel the Sugars to sign their version of the releases. After a December 2011 hearing, the court ordered the parties to sign a general release without the requested "post-settlement" carve-out provision. The appellees complied with, and did not appeal, that order.

Ultimately, Bank Leumi refused to divulge account information without an Israeli court order, and the guardian had to pursue court proceedings in Israel to

compel the bank to provide information. In April 2013, Bank Leumi finally released information to the guardian. This included a 2005 letter showing a transfer by Idelle Stern to the Sugars' family.

In 2013, after Idelle Stern's death, the appellees petitioned for administration of her estate. The remaining Bank Leumi funds, approximately $1,100,000.00, were transferred to the Estate.

The appellees then filed a "Petition to Enforce Orders Adopting Settlement Agreements and to Declare Parties' Rights and Obligations," that culminated in the order presently on appeal. The appellees alleged that there were funds in Israel that were not disclosed during the July 2011 negotiations. They requested that the Sugars return to the Estate the funds received in 2005, approximately $350,000.00, and that the Sugars be precluded from receiving any proceeds from the Bank Leumi account via the Estate.

The Sugars then filed their cross-motion to enforce the 2011 settlement agreement. The Sugars alleged that the existence of Idelle Stern's Bank Leumi account was disclosed and the guardian was aware of them before the settlement, as evidenced by the transcripts of the hearing on the December 2011 hearing regarding the applicability of the carve-out provision.

After a hearing, the trial court denied the Sugars' motion and granted the appellees' petition. The court declared that Judy Sugar had waived any entitlement

to the Israeli account funds in the February 2011 settlement, or any other funds, except for proceeds of the Trust (minus the $580,000 set-off), and that any funds received by the Sugars from the Israeli account before the settlements had to be disgorged by the Sugars. Finally, the court ruled that the Sugars could not enforce the release since they did not make a full disclosure. This appeal followed.

II.    Analysis

Settlement agreements are contractual in nature and are interpreted accordingly. Muñoz Hnos., S.A. v. Editorial Televisa Int'l., S.A., 121 So. 3d 100, 103 (Fla. 3d DCA 2013). Our review of the settlement agreements and releases in the present case is subject to a *de novo* review. In the event construction or interpretation seems necessary, "[t]he public policy of the State of Florida, as articulated in numerous court decisions, highly favors settlement agreements among parties and will seek to enforce them whenever possible." Sun Microsystems of Cal., Inc. v. Eng'r & Mfg. Sys., C.A., 682 So. 2d 219, 220 (Fla. 3d DCA 1996).

Applying the plain language of the settlement agreements and releases, we conclude that the successor trial judge (1) correctly denied the Sugars' cross-petition for distribution of part of the Bank Leumi proceeds, (2) erred in determining that the Sugars must disgorge the pre-settlement transfers from Idelle Stern's Bank Leumi account, and (3) erred in ruling that the appellees could pursue

7

an action for wrongful taking against the Sugars. These contract interpretation determinations are buttressed by two additional and independently-applicable principles.

### A.   Prior Adjudication and Appeal

First, a dispositive legal issue which has been adjudicated in the approval of a settlement agreement, and later unsuccessfully appealed—here, the predecessor trial judge's order approving the February 2011 settlement—may not be relitigated now by the appellees. Both of the settlement agreements in the record in this appeal specified that general releases would be exchanged by the Sugars and the parties to the two agreements. The February 2011 agreement included a mutual release of all causes of action, claims, demands, damages expenses, and attorney's fees (among other elements of the usual verbiage in a general release) relating to Idelle Stern, her properties, assets, and liabilities, "whether known or unknown." The appellees later voluntarily dismissed their appeal from the trial court order approving the February 2011 settlement agreement and disallowing the objections by the appellees.[4]

Similarly, the July 2011 settlement specified that "All parties shall exchange reciprocal releases as to all matters . . . ." The comprehensive nature of the "global" July 2011 settlement of this bitter, expensive, and divisive intra-family

_____

[4] See supra note 2.

8

dispute is illustrated by the fact that it covered the placement of the parties'

pictures within Idelle Stern's residence, as well as the burial arrangements for her

subsequent death (including the designation of a person to choose the language for

her headstone).

However, that level of detail did not stop the parties' attempts to renegotiate

terms after the settlement was reached. The Sugars disclaimed the omission (due

to a scrivener's error in the final draft) of a provision precluding them from

receiving any proceeds of the Estate's lawsuit against Oppenheimer Trust

Company.[5] And the appellees insisted that the general releases should include an

exclusion for claims relating to the "new discovery" that Idelle Stern had

transferred funds from the Israeli bank account to the Sugars in 2005. The

appellees' proposed a qualified release:

> The matters Released herein are based upon the representations
> of all parties at the negotiations that occurred on the Settlement Date
> and shall not be construed in any way to release any matters not
> disclosed or misrepresented on or before the Settlement Date as well
> as any action and actions, cause and causes of actions, suits, attorneys'
> fees and costs, claims, debts, dues, sums of money arising from
> thereafter [sic].

In each instance, the predecessor trial judge enforced the settlement terms.

In the case of the appellees' objection to the general release language, the trial

court found that no such carve-out was warranted and directed the appellees to

---

[5] This dispute was resolved in favor of the appellees in another prior appeal to this
Court, Sugar v. Guardianship of Stern, 109 So. 3d 809 (Fla. 3d DCA 2013).

execute the releases without such an exclusion.

We conclude that the general release bars the appellees from attempting to relitigate transfers relating to Idelle Stern's Bank Leumi account in Israel. The appellees' own motion to compel the guardian to investigate the Bank Leumi account, an issue and motion raised well in advance of the July 2011 settlement, belies their current claim that the Bank Leumi issue was a new, post-settlement discovery. Accordingly, we reverse the successor trial judge's conclusion that the Sugars must disgorge the proceeds transferred to them from the Bank Leumi account prior to the July 2011 settlement.

Here, as in Hernandez v. Gil, 958 So. 2d 390, 392 (Fla. 3d DCA 2007), a party "readily accepted the benefit of his bargain but has, however, on numerous occasions attempted to circumvent his contractual obligations by filing lawsuits relating to the same claims he agreed to release per the express terms of the [Global Settlement Agreement] and the corresponding releases." The attempt in the present case fails, just as it did in Hernandez.

B.     Settlement Negotiations; "Reliance" After Claiming Dishonesty

Second, a written settlement agreement which states that it is "based upon the representations of the parties as of the date of the settlement," but does not (a) incorporate those specific representations into the written agreement, or (b) attach them or refer to separate writings detailing those representations, has no apparent

10

evidentiary foundation in a later attempt to avoid the settlement terms because of alleged misrepresentation. Statements during settlement negotiations concerning liability, the absence of liability, or value, are privileged and inadmissible in subsequent proceedings in the same case. § 90.408, Fla. Stat. (2014); see also Bern v. Camejo, 168 So. 3d 232, 236 (Fla. 3d DCA 2014); Agan v. Katzman & Korr, P.A., 328 F. Supp. 2d 1363, 1372 (S.D. Fla. 2004).[6]

This is also so because, after the assertion of claims involving dishonesty, the claimant in negotiations culminating in a settlement and release cannot rely on oral representations made by the party already asserted to have been dishonest. Finn v. Prudential-Bache Sec., Inc., 821 F.2d 581, 586 (11th Cir. 1984); Sutton v. Crane, 101 So. 2d 823 (Fla. 2d DCA 1958); Columbus Hotel Corp. v. Hotel Mgmt. Co., 156 So. 893 (Fla. 1934). This is as simple as the adage, "fool me once, shame on you; fool me twice, shame on me," but was expressed more eloquently by Justice Davis of the Supreme Court of Florida in Columbus Hotel Corp.:

> And, where parties are given to understand that they are dealing at arm's length in the compromise of an already existing controversy that itself comprehends charges of legal fraud, misconduct, and dishonest suppression of material facts, as was the situation with the parties now before this court in the instant proceeding, there arises no duty on the part of one of the antagonists to reveal his own peculiar situation to his adversary, on pain of being held liable for fraudulent concealment of facts if he does not do so.

---

[6] The common way to bar the attempted resurrection of alleged representations during settlement negotiations is the use of a merger/integration provision in a written settlement agreement.

11

156 So. at 902 (emphasis omitted).

This principle also provides an independently-sufficient basis to affirm the trial court's enforcement of the settlement agreement (as against the Sugars' claim of an additional right to participate in the Bank Leumi bank account proceeds) and to reverse the trial court's determination that the agreements and releases did not bar the appellees' disgorgement and "wrongful taking" claims against the Sugars.

III.    Conclusion

Affirmed in part and reversed in part, with directions to enter final judgment denying relief to the appellees regarding their claims against the Sugars for pre-settlement transfers from the Bank Leumi account, and denying relief to the Sugars with respect to those proceeds which were turned over to the Estate of Idelle Stern by Bank Leumi.