SALTER, J.
YS Catering Holdings, Inc. ("YSCH") and Scher Duchman ("Duchman") appeal from a final order granting a motion by the appellees, Attollo Partners, LLC ("Attollo"), Rajesh Rawal ("Rawal"), and Roy Heggland ("Heggland"), to dismiss the second amended complaint by YSCH and Duchman with prejudice.
The underlying dispute involves complex business transactions and the detailed documents *1205 memorializing the parties' agreements. The trial court correctly concluded that the written documents precluded the artfully pled tort claims and other theories of liability advanced by YSCH and Duchman. We affirm the dismissal of those claims with prejudice.
Background and Procedural History
The circuit court lawsuit filed by YSCH and Duchman alleged, in its third formulation (the second amended complaint, referred to here as the "Complaint"), a long litany of claims for breach of fiduciary duty; aiding and abetting breaches of fiduciary duty; fraud in the inducement; civil conspiracy to commit fraud; declaratory judgment; injunctive relief; breach of contract; and breach of the covenant of good faith and fair dealing.[1]
The parties on both sides were experienced, sophisticated investors and entrepreneurs. Duchman founded a company, YS Catering, Inc., which provided ready-to-eat meals to customers under the trade name of "The Fresh Diet, Inc." That company, referred to here as "Fresh Diet," entered into a series of bank loans for $1.2 million, personally guaranteed by Duchman. Under New York law, Duchman was also personally responsible for assuring that Fresh Diet made the required state tax filings and payments.
In 2013, Duchman met appellees Rawal and Heggland, who were members of Attollo. Following negotiations between Duchman and Attollo, Attollo acquired an 18% ownership interest in Fresh Diet. Duchman was a shareholder of YSCH, and that company owned a 46% interest in Fresh Diet. Rawal became the chief executive officer, and Heggland became general counsel, of Fresh Diet.
In 2014, Duchman introduced a principal of Attollo to the chief executive officer of a publicly-traded company, Innovative Food Holdings, Inc. ("IVFH"). IVFH engaged in a line of business similar to that of Fresh Diet, and soon the two companies agreed to a merger. Duchman approved and signed an Agreement and Plan of Merger ("Merger Agreement") in August 2014. The 31-page, detailed Merger Agreement (subsequently an attachment to the Complaint), contained several terms pertinent here:
• A rather typical, boilerplate merger/integration provision, section 6.3, acknowledging that the Merger Agreement and related written agreements "constitute the entire agreement among the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof." The provision also disclaimed any intention to benefit non-parties, and precluding amendment or waiver "except by execution of an instrument in writing signed on behalf of each Party hereto."
• Extensive representations and warranties by Fresh Diet in section 2.8, confirming the timely filing and payment of all tax returns.
• A separate Article III and thirteen sections within that Article containing detailed representations and warranties of IVFH to Fresh Diet regarding the acquiring entities. These included statements regarding the absence of undisclosed liabilities and the absence of undisclosed developments and commitments other than as set forth in the Merger *1206 Agreement and IVFH financials. As but one example pertinent to the claims in the later Complaint, section 3.10 represented that IVFH had not entered into any agreement other than in the ordinary course of business consistent with past practice.
• A section 4.4 addressing employment agreements by IVFH and Fresh Diet employees, disclaiming any guarantee of permanent or long-term employment to designated "Transferred Employees" and stating a general intention (but not a commitment) to enter into employment agreements with key employees.
• The Merger Agreement is governed by Florida law.
In 2016, Duchman (through an entity he controlled) bought back Fresh Diet. To facilitate this transaction and obtain the release of restrictions on transfer of their restricted shares in IVFH, Duchman and other shareholders of YSCH signed a "Share Issuance Agreement" (the "2016 Agreement"), containing a broad and mutual release and covenant not to sue, for themselves and their successors, affiliates, heirs, beneficiaries, agents, assigns and representatives. Those persons and entities agreed not to "sue or bring any action or other proceeding of any nature against, and fully release [IVFH] and each of its subsidiaries, predecessors, affiliated entities, successor and assigns, together with its and each of those entities' respective owners, officers, directors, members, partners, shareholders, employees, agents, representatives, attorneys, fiduciaries and administrators (collectively, "Releasees"), from any and all known and unknown claims, complaints, causes of action, demands or rights of any nature whatsoever which any Releaser has against any Releasee... except, as it relates to claims arising from a breach of [the 2016 Agreement]."
Fresh Diet did not prosper and grow as the parties had hoped. As President of Fresh Diet, Duchman executed an assignment by Fresh Diet for the benefit of creditors,[2] and the assignee filed a petition in the circuit court for Miami-Dade County to provide for the payment of Fresh Diet's debts "as far as it is possible." The assignment had the effect, whether intended or not, of assigning Fresh Diet's assets, including claims, demands, and choses in action, to the assignee (a non-party to the present proceedings).
In 2017, YSCH and Duchman commenced the present proceedings in the circuit court in Miami-Dade County, contending that the defendants breached their fiduciary duties, fraudulently induced YSCH and Duchman to enter into the agreements and transactions relating to Fresh Diet, engaged in a conspiracy to harm them, and aided and abetted others in those unlawful activities. Following motions to dismiss and orders of dismissal of the complaint and first amended complaint, YSCH and Duchman filed the third and final incarnation of the Complaint at issue here, the 66-page, 38 count litany of claims described previously.
Taking these allegations as true, but distilling them to their essence, YSCH and Duchman primarily claim that the defendants falsely promised: to remove Duchman as a guarantor of bank loans to Fresh Diet; to remove Duchman as a responsible party to file and pay New York state taxes; to be named a member of IVFH's board of directors; and to give Duchman a new employment agreement (or provide additional stock to Duchman). The defendants moved to dismiss the Complaint with *1207 prejudice, which was heard and granted, and this appeal followed.
Analysis
The parties properly agree that the dismissal of the Complaint with prejudice is reviewed de novo, citing Bensoussan v. Banon5 LLC, 252 So. 3d 298 (Fla. 3d DCA 2018). We assume the allegations of the Complaint and attachments to be true, and construe all reasonable inferences in favor of YSCH and Duchman. See United Auto. Ins. Co. v. Law Offices of Michael I. Libman, 46 So. 3d 1101, 1103-04 (Fla. 3d DCA 2010).
The claims of YSCH and Duchman are belied by multiple and independent legal principles. First, the claims are antithetical to the contractual representations and disclaimers of oral understandings or agreements as provided in the Merger Agreement. Although Duchman argues that he is not bound by those terms because he was not individually a party to the Merger Agreement, the recitals evidence his approval of the terms as a director, and his signature as a shareholder expressly evidences his consent to the terms in that additional capacity.
Having approved those terms and attached the documents to their Complaint, YSCH and Duchman cannot prevail on the alleged oral misrepresentations claimed to overcome their later written agreements. See B&G Aventura, LLC v. G-Site Ltd. P'ship, 97 So. 3d 308 (Fla. 3d DCA 2012).
But there is more. After the Merger Agreement and closing, YSCH did not obtain the relief from bank guaranties and tax payments they allege they were promised, nor did they obtain the employment agreement sought by Duchman. Nevertheless, in 2016, they executed the 2016 Agreement containing the sweeping release of all claims, known and unknown, and against numerous parties (but certainly including the defendants in the Complaint), as excerpted in a prior section of this opinion.
We have followed a common sense principle enunciated by the Florida Supreme Court many years ago; Columbus Hotel Corp. v. Hotel Management Co., 116 Fla. 464, 156 So. 893 (Fla. 1934). If the plaintiffs were defrauded by an allegedly fraudulent inducement (and conspiracy) to enter into the Merger Agreement in 2014, and the performance that was promised was not forthcoming, they certainly could not justifiably rely on further inducements to enter into the 2016 Share Issuance Agreement and its sweeping release. The principle is that "after the assertion of claims involving dishonesty, the claimant in negotiations culminating in a settlement and release cannot rely on oral representations made by the party already asserted to have been dishonest." Sugar v. Estate of Stern, 201 So. 3d 103, 108 (Fla. 3d DCA 2015).
Finally, the assignment for the benefit of creditors assigned away any claims, including choses in action, of Fresh Diet, to the assignee for the benefit of creditors, a non-party. See Akin Bay Co. v. Von Kahle, 180 So. 3d 1180 (Fla. 3d DCA 2015).
For all these reasons, the final order dismissing the Complaint with prejudice is affirmed.

These claims were detailed in 66 pages, as 38 separate counts, in 375 numbered paragraphs, and with 15 attached exhibits comprising another 93 pages.

See Chapter 727, Florida Statutes (2016).